Grafton
No. 83-062
No. 83-105

### JEANNE WASSERMAN
### AND
### SANDELL DEVELOPMENT CORPORATION

v.

### CITY OF LEBANON

February 23, 1984

*Clauson, Smith & O'Connell,* of Hanover (*Daniel G. Smith* and *Dennis C. O'Connell* on the brief, and *K. William Clauson* orally), for the plaintiffs.

*Decato & Cirone P.A.,* of Lebanon (*R. Peter Decato* on the brief and orally), for the defendant.

BATCHELDER, J. We have consolidated for purposes of appeal an interlocutory transfer without ruling, *see* Supreme Court Rule 9, and an appeal from a ruling of the superior court. The issues in the two actions are related and arise out of a common factual background. The decisions of the Lebanon Zoning Board of Adjustment and Planning Board are the focus of the controversy. Those decisions deny the plaintiffs' predecessor-in-interest permission to build a replacement dam, on a site known as the Cummings Dam, on the Mascoma River in Lebanon.

The principal question before us is whether RSA chapters 481 and 482 have preempted regulation of the construction and maintenance of dams and hydroelectric generating facilities in this State, to the exclusion of local regulation or control through building codes, local planning or zoning ordinances, or flood plain ordinances. We answer this question in the affirmative, reverse the ruling of the superior court, and remand the cases to the superior court for proceedings consistent with this opinion.

A brief historical review of the facts underlying this litigation begins with the location of the dam on the river about 1886 and its use as a source of mechanical power. Beginning in 1917, the dam was used for the generation of electric power for on-site use by the Everett Knitting Works. At the dam site during this period were a mill or factory, in addition to a generating station, powerhouse and penstocks. The factory and dam were purchased by E. Cummings Leather Co., Inc. (Cummings) in 1939.

Soon after its acquisition of the property, Cummings repaired the dam, generators and machinery and proceeded to generate electric power for on-site use until 1963, when it made more sense economically to purchase electric power from other sources. The dam, after 1963, continued to create a pond from which water was drawn for use in the tanning process in the mill. In 1980, the State Water Resources Board instructed the then owner of the Cummings Dam, M. Frenville Co., to repair the dam. Operation ceased in 1980 by reason of the company's bankruptcy. Sandell Development Corporation (Sandell) purchased the dam, dam site, and adjacent factory in 1980, at the conclusion of foreclosure proceedings against the property instituted by the Hanover Bank and Trust Co.

Sandell, in June 1981, licensed Essex Development Associates, Inc. (Essex) to renovate and operate the dam for purposes of generating hydroelectric power. On October 20, 1981, N.H. Hydro Associates, an agent of Essex, received "conceptual approval" from the New Hampshire Water Resources Board, pursuant to RSA 482:4, of its plan to reconstruct the dam. Earlier in 1981, Sandell had presented its plan, which called for the development of the Cummings Dam for hydroelectric generation and the proposed use of the site for residential and commercial purposes, to the Lebanon zoning and planning boards.

On September 22, 1981, a representative of Essex was informed by city officials that the operation of the dam constituted a discontinued non-conforming use in the residential-commercial zoning district and that Essex would have to apply to the Lebanon Zoning Board of Adjustment for a special exception in order to resume the use. Essex was further advised that a variance would be required from the zoning board of adjustment because the dam and appurtenant structure constituted a non-conforming lot in the residential-commercial district.

Essex's agent was also told by Lebanon officials that its proposed use of the dam site would constitute a subdivision and that subdivision approval as well as site plan approval would be required from the planning board. Essex filed the necessary applications with the zoning board of adjustment for a special exception to resume a non-conforming use and for a variance to create a non-conforming use. Essex also filed an application for subdivision and site plan approval with the planning board.

The zoning board subsequently ruled that a special exception to resume the use of the dam was required and denied the application for a special exception on the ground that the reconstruction and use of the Cummings Dam would adversely affect the character of the neighborhood. The applications for subdivision and site plan approval were denied by the planning board, which denials were based upon the earlier denial by the zoning board of adjustment of Essex's application for the special exception. The denials by the zoning board and the planning board were appealed to the superior court. During the appeal process, the interest of Essex in its dam license was assigned to Jeanne Wasserman, who, together with Sandell, was permitted to intervene in the place of Essex.

The Superior Court (*Johnson*, J.) approved the report of the Master (*Thomas M. Pancoast*, Esq.), ordering: first, that the appeal from the board of adjustment's denial of a variance and special exception be dismissed; and second, that a declaratory judgment issue to the effect that Sandell and Wasserman must comply with the city's zon-

ing ordinance, subdivision regulations and site plan review regulations in constructing, maintaining, and operating the proposed hydroelectric dam and generating station. The plaintiffs appeal from this order, taking issue with various findings and rulings made by the master and the board of adjustment. Also, the plaintiffs generally challenge the power of the board of adjustment to prevent the reconstruction and use of the dam for hydroelectric generation in the face of State statutes comprehensively regulating the use of dams. *See* RSA chapters 481 and 482.

In addition, the following question, spawned by the plaintiffs' petition for declaratory judgment in the companion case, was transferred on an interlocutory basis from the Trial Court (*Johnson* J.):

"Does the proposed renovation and use of the Cummings Dam by plaintiffs for the purpose of generating hydroelectric power constitute an essential use under the Lebanon Zoning Ordinance (Article VII, Section 702 of the Lebanon Zoning Ordinance) and thus a permitted use in the residential commercial zoning district (Article II, Table 204.4 of the Lebanon Zoning Ordinance)?"

The first and overriding question to be resolved is the extent to which regulation of the construction and maintenance of dams, as well as attendant hydroelectric generation facilities, has been preempted by State law to the exclusion of local regulation or control through building codes, local planning or zoning ordinances, or flood plain ordinances.

■ The announced policy of the State is to encourage the development of hydro-energy production. This policy was most forcefully announced in a joint resolution of the Senate and House of Representatives, entitled: "Joint Resolution To Establish A State Policy On Energy." Laws 1981, ch. 535 (adopted June 30, 1981). Because "the production and use of energy is essential to the economic, social and physical well-being," *id.*, of our citizens, the legislature declared that it was the State's policy, *inter alia*, to:

"[III](d) Develop New Hampshire's hydroelectric generation potential to the maximum practical extent.

(1) The use of hydro should be encouraged by programs to coordinate the permit application process and expedite the licensing of hydro projects throughout the state.

(2) Use of hydro resources should be encouraged by revision of taxation and financing policies which may impede development of potential hydro sites.

. . . .
VI. Reduce regulation.

(a) Regulation of energy extracting businesses should be simplified and made less intrusive to present an attractive climate for needed investment in exploration and production, while protecting the environment and natural resources."

*Id.* In keeping with this policy, the legislature, in the statute creating the water resources board, has also provided in RSA 481:1:

"I. It is declared that there is a statewide need for conservation and distribution of water and the regulation of the flow of rivers and streams and for the development and promotion of hydro-energy sources, and that the public interest, welfare and necessity require the construction of projects for the conservation, development, storage, distribution, and utilization of water and the operation of hydro-energy production facilities relying on water energy resources. The corporation authorized under this chapter shall be regarded as performing a governmental function in carrying out these provisions.

II. It is further declared that there is a special public need for dams, reservoirs and hydro-energy production facilities at strategic locations for regulating the flow of rivers and streams to lessen damages resulting from floods and to promote the state's industrial and economic welfare by enhancing and utilizing the present and potential water power along the rivers and streams. *The construction, maintenance and operation of such dams, reservoirs and hydro-energy production facilities is the primary purpose of this chapter.*"

RSA 481:1 (emphasis added); *see* RSA 482:35; RSA 362-A:1 (Supp. 1981).

RSA chapter 481 creates the water resources board and defines its jurisdiction, while RSA chapter 482 prescribes procedures to be followed by municipalities, individuals, partnerships, corporations or associations in constructing, repairing or rebuilding dams.

 We have stated repeatedly that '[t]owns may not regulate a field that the State has preempted.'" *Stablex Corp. v. Town of Hooksett*, 122 N.H. 1091, 1104, 456 A.2d 94, 101 (1982) (quoting *J. E. D. Associates, Inc. v. Town of Sandown*, 121 N.H. 317, 319, 430 A.2d 129, 130 (1981)). Where the State has enacted a comprehensive regulatory scheme, no local actions or ordinances will be permitted to

contravene it. *Town of Salisbury v. New England Power Co.*, 121 N.H. 983, 984–85, 437 A.2d 281, 282–83 (1981); RSA 47:17, XV ("no by-law or ordinance [of a town] shall be repugnant to the constitution or laws of the state").

■ From a review of the statutes regulating dams and creating the water resources board, RSA chapters 481 and 482, and considering the State policy to encourage the production of hydroelectricity, we conclude that this area is the subject of a comprehensive regulatory scheme. We hold, therefore, that the State has preempted the field, preventing any intrusion by local authorities.

■ We hold, further, that by acting through its zoning ordinances to prevent the reconstruction of the Cummings Dam, the City of Lebanon has acted contrary to the legislative intent underlying RSA chapters 481 and 482 and, consequently, has exceeded its authority. *See State v. Driscoll*, 118 N.H. 222, 224, 385 A.2d 218, 220 (1978).

■ It necessarily follows that the plaintiffs may proceed to reconstruct the Cummings Dam to make it suitable for the generation of hydroelectric power as permitted by the water resources board, without interference from the exercise of regulatory powers by the City of Lebanon, a subdivision of the State. "Any local regulations relating to such matters as traffic and roads, landscaping and building specifications, snow, garbage, and sewage removal, signs and other related subjects, to which any industrial facility would be subjected and which are administered in good faith and without exclusionary effect, may validly be applied," *Stablex Corp. v. Town of Hooksett*, 122 N.H. at 1104, 456 A.2d at 101, to the plaintiffs' project by the City.

*Reversed and remanded.*

All concurred.