Coos
No. 95-309

## ARTHUR WHITCOMB, INC.
### D/B/A TWIN MOUNTAIN SAND & GRAVEL

v.

### TOWN OF CARROLL

November 13, 1996

*Gallagher, Callahan & Gartrell, P.A.,* of Concord (*Donald E. Gartrell* and *Andrew B. Eills* on the brief, and *Mr. Eills* orally), for the plaintiff.

*Daniel D. Crean,* of Concord, by brief and orally, for the defendant.

*H. Bernard Waugh, Jr.,* of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae.*

JOHNSON, J. This case concerns the extent to which the defendant, the Town of Carroll (town), may regulate the commercial

excavation operation of the plaintiff, Arthur Whitcomb, Inc. d/b/a Twin Mountain Sand & Gravel (Whitcomb). The town appeals the Superior Court's (*Lynn*, J.) ruling that: (1) RSA chapter 155-E (1994) preempts the town's zoning ordinances and site plan review regulations; (2) RSA 155-E:2, III(a) exempts all but one parcel of Whitcomb's property from the permit requirements of RSA chapter 155-E; and (3) RSA 155-E:2, III(a) exempts Whitcomb's blasting operation from the chapter's permit requirements. We affirm in part, reverse in part, and remand.

Since 1972, Whitcomb or its corporate predecessors have operated a stationary manufacturing plant on one of several adjacent parcels of land Whitcomb owns in Carroll. The plant manufactures and processes sand, gravel, and construction aggregate excavated from some of the parcels. During most of the plant's existence, Whitcomb and its predecessors have disputed the town's authority to regulate the excavation. In particular, the town has attempted to regulate Whitcomb's blasting operation, begun in 1988. The parcel of land containing the blasting operation is not directly adjacent to the parcel containing the stationary manufacturing plant.

In 1993, Whitcomb and the town entered into a stipulation under which Whitcomb agreed to seek approval for its excavation from the Carroll Zoning Board of Adjustment (ZBA) and the Carroll Planning Board (planning board). Under the stipulation, Whitcomb reserved the right to challenge the town's regulatory authority in the future. Whitcomb applied for approval as agreed, and in 1994, the ZBA granted Whitcomb a special exception for the excavation. The planning board likewise granted it a site plan permit and a permit pursuant to the requirements of RSA chapter 155-E. The two boards, however, imposed several restrictions on Whitcomb's operation, including a ban on blasting.

Whitcomb appealed the boards' decisions to the superior court and moved for summary judgment, citing the permit exemption in RSA 155-E:2, III for excavations associated with stationary manufacturing plants. The town objected to the motion, arguing that RSA 155-E:2, III(a) exempts Whitcomb's excavation only from the permit requirements of RSA chapter 155-E, not from local land use ordinances and regulations. The town contended, moreover, that the exemption in RSA 155-E:2, III(a) covers only a portion of Whitcomb's land and does not apply to blasting. The superior court granted Whitcomb's motion for summary judgment, ruling, in part, that RSA chapter 155-E preempts local ordinances and regulations. The town appealed.

In its brief, the town raises several procedural issues. We do not address them because the town either failed to include the issues in

its notice of appeal, SUP. CT. R. 16(3)(b); *State v. Peterson*, 135 N.H. 713, 714-15, 609 A.2d 749, 750-51 (1992), or did not brief them adequately, *State v. Hermsdorf*, 135 N.H. 360, 365, 605 A.2d 1045, 1048 (1992).

The first question we address is whether Whitcomb's excavation must comply with the town's zoning ordinances and planning regulations. Resolution of this issue hinges on the meaning of the statutory provisions comprising RSA chapter 155-E. As we have stated many times, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Dionne v. City of Manchester*, 134 N.H. 225, 227, 589 A.2d 1016, 1017 (1991) (quotations omitted).

The town argues in its brief that RSA 155-E:2, III(b) specifically requires Whitcomb to comply with local land use ordinances and regulations. The record, however, reveals no mention of subparagraph III(b) by either party or the superior court below. "Where a statutory claim is not properly raised below so as to put the tribunal on notice that it should address the factual as well as legal issues peculiar to such a . . . claim, we will not review the claim on appeal." *Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 60, 623 A.2d 746, 748 (1993) (quotation omitted). RSA 155-E:2, III(b) provides:

> No further permit shall be required under this chapter for excavation from a site which on August 4, 1989, was contiguous to or was contiguous land in common ownership with stationary manufacturing and processing plants *for which local or state permits have been granted* since August 24, 1979, and before August 4, 1989, which use earth obtained from such site. It is further provided that their operation and reclamation shall continue to be regulated by *such local or state permits* and any renewals or extensions thereof by the permitting authority or authorities.

(Emphasis added.) It is unclear from the record whether pertinent local or State permits have been granted. The parties dispute this factual issue, and the superior court made no relevant findings. Accordingly, we do not specifically consider RSA 155-E:2, III(b) with regard to the preemption question and instead consider only whether RSA chapter 155-E as a whole preempts local legislation pertaining to excavation.

We have recently noted, "Towns are merely subdivisions of the State and have only such powers as are expressly or impliedly granted to them by the legislature." *Town of Pelham v. Browning*

*Ferris Indus. of N.H.*, Inc., 141 N.H. 355, 363, 683 A.2d 536, 541 (1996) (quotation omitted). Although RSA chapter 674 (1996) grants towns the authority to enact land use ordinances and regulations, local legislation is invalid if it is inconsistent with State law. *See State v. Driscoll*, 118 N.H. 222, 224, 385 A.2d 218, 220 (1978). "Local legislation is repugnant to State law when an ordinance or bylaw either expressly contradicts a statute, or else runs counter to the legislative intent underlying a statutory scheme." *Id.* (citations omitted). *See generally* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE, PLANNING AND ZONING § 12.01 (2d ed. 1993).

Local ordinances and regulations governing a particular field run counter to a statute's legislative intent if the intent is to preempt that field. *See Wasserman v. City of Lebanon*, 124 N.H. 538, 542-43, 474 A.2d 994, 998 (1984). Thus, "[t]owns may not regulate a field that the State has preempted." *Stablex Corp. v. Town of Hooksett*, 122 N.H. 1091, 1104, 456 A.2d 94, 101 (1982) (quotation omitted). We infer an intent to preempt a field when the legislature enacts a comprehensive, detailed regulatory scheme. *See id.* at 1102-04, 456 A.2d at 100-01; *see also Wasserman*, 124 N.H. at 542-43, 474 A.2d at 998; *Driscoll*, 118 N.H. at 224-26, 385 A.2d at 220-21; *cf. Corey v. Town of Merrimack*, 140 N.H. 426, 428, 666 A.2d 1359, 1360-61 (1995) (no preemption inferred because statutory scheme did not purport to regulate particular field comprehensively).

RSA chapter 155-E, governing the operation and reclamation of excavations, constitutes a comprehensive, detailed regulatory scheme. The chapter requires a statutory permit, issued by a local regulator such as a planning board, RSA 155-E:1, III, :3, :8, for all excavations except those specifically listed in RSA 155-E:2 and :2-a. An excavator may obtain such a permit only after successfully completing an extensive application process. RSA 155-E:3; *see also* RSA 155-E:4-:11; 15 LOUGHLIN, *supra* §§ 36.11-.20. Significantly, most of the excavations exempt from this process, including those associated with stationary manufacturing plants, RSA 155-E:2, III(a), are nonetheless subject to the same operational and reclamation standards governing non-exempt excavations. RSA 155-E:2, :4-a, :5. These standards are specific and technical. For example, RSA 155-E:4-a, II-a states:

> No excavation shall be permitted within 75 feet of any great pond, navigable river, or any other standing body of water 10 acres or more in area or within 25 feet of any other stream, river or brook which normally flows throughout the year, or any naturally occurring standing body of water less

than 10 acres, prime wetland and designated in accordance with RSA 482-A:15, I or any other wetland greater than 5 acres in area as defined by the wetlands board.

Such exhaustive treatment of the field manifests a legislative intent to preempt it.

The legislature's purpose in enacting RSA chapter 155-E was, in part, to increase the supply of construction materials and decrease "the cost of roads and other governmental infrastructure" to the public by curtailing "simultaneous state and local regulations of the same activity." Laws 1989, 363:1. The legislature recognized that "comprehensive and extensive local regulation of excavation of rock, sand, and gravel for the production of construction materials is in the best interest of the citizens and taxpayers of New Hampshire." *Id.* Municipalities, however, regulate excavation by administering the requirements of RSA chapter 155-E, *e.g.*, RSA 155-E:1, III, :3, :4, not by burdening the activity with its own substantive requirements.

The town argues that several portions of the chapter indicate that the legislature did not intend to preempt the field of excavation. For example, RSA 155-E:2, I, and IV contain explicit exemptions from local ordinances and regulations. If the legislature had intended to preempt the field of excavation, the town contends, it would not have enacted these provisions because they would be redundant and therefore unnecessary. We disagree. The exemptions from local ordinances and regulations found in RSA 155-E:2, I, and IV are not unconditional. They are each dependent upon at least one condition and, accordingly, cannot be deemed redundant or unnecessary in a statutory scheme that preempts local legislation. RSA 155-E:2, I(a), for instance, relating to existing excavations, states:

Such an excavation site *shall be exempt* from the provisions of local zoning or similar ordinances regulating the location of the excavation site, *provided* that at the time the excavation was first begun, it was in compliance with such local ordinances and regulations, if any, as were then in effect.

(Emphasis added.) Likewise, RSA 155-E:2, IV(b), relating to high-way excavations, states: "Such excavation *shall not be exempt* from local zoning or other applicable ordinances, *unless* such exemption is granted pursuant to subparagraph (c)." (Emphasis added.) Subparagraph (c) allows "[t]he department of transportation or its agent [to] apply directly to the appeals board created under RSA

21-L to be exempted from the provisions of local zoning or other ordinances or regulations."

The town also cites RSA 155-E:4, III to support its position. This statute reads, in part: "The regulator shall not grant a permit . . . [w]hen the excavation is not permitted by zoning or other applicable ordinance . . . ." As the superior court explained, RSA 155-E:4, III actually strengthens a conclusion that the legislature intended to preempt local land use ordinances and regulations:

> If, as the Town argues, the legislature intended chapter 155-E and local zoning ordinances to operate as independent but essentially parallel sources of regulatory authority over excavations, there would have been no need to include this provision because even if an excavation project were granted a 155-E permit the municipality could still have prohibited the project under its zoning ordinance. The inclusion of §E:4, III makes sense only if the legislature generally intended chapter 155-E to preempt local land use regulations *except where specifically indicated to the contrary*.

(Emphasis in original.)

RSA 155-E:2, III(b) bolsters a preemption conclusion in a similar manner. This provision states that the operation and reclamation of certain excavations "shall continue to be regulated by . . . local or state permits and any renewals or extensions thereof by the permitting authority or authorities." Had the legislature not intended to preempt local ordinances and regulations pertaining to excavation, there would be no need for this provision. *Cf. In re Guardianship of Raymond E.*, 135 N.H. 688, 691, 609 A.2d 1220, 1221 (1992) (under customary rule of statutory construction, legislature does not enact unnecessary provisions).

Finally, the town cites to RSA 155-E:4-a, VIII. That paragraph states, in part: "[N]o exemption under this chapter shall be construed as an exemption from any other state statute." The town interprets this to mean that excavations are not exempt from RSA title 64, which contains the enabling laws for local land use legislation such as RSA chapter 674. As noted above, however, RSA chapter 674 merely grants municipalities the authority to adopt certain ordinances and regulations. Such local legislation is invalid if it is inconsistent with State law. *See Driscoll*, 118 N.H. at 224, 385 A.2d at 220.

We note that both Whitcomb and the town cite to portions of the legislative history of RSA chapter 155-E supporting their respective positions. Our review of the chapter's extensive history reveals no

single, clear voice on the issue of preemption apart from that expressed in the words of the enacted statutes. We therefore do not find the history cited by either party persuasive.

■ We conclude that the legislature intended to preempt the field of excavation. We do not conclude, however, that all local legislation applicable to an excavation is therefore void. RSA chapter 155-E preempts only local ordinances and regulations "that would have the effect or intent of frustrating State authority." *Town of Pelham*, 141 N.H. at 363, 683 A.2d at 541. "[L]ocal regulations relating to such matters as traffic and roads, landscaping and building specifications, snow, garbage, and sewage removal, signs, and other related subjects, to which any industrial facility would be subjected and which are administered in good faith and without exclusionary effect, may validly be applied" to an excavation. *Stablex*, 122 N.H. at 1104, 456 A.2d at 101. We reverse the superior court's ruling to the extent that it would invalidate such regulations. We remand for further proceedings consistent with our holding.

The town next argues that the superior court erred in ruling that the permitting exemption in RSA 155-E:2, III(a) for excavations associated with stationary manufacturing plants applies to all but one of Whitcomb's thirteen parcels of land. The relevant part of this exemption provides:

> No permit shall be required under this chapter for excavation from an excavation site which on August 4, 1989, was contiguous to or was contiguous land in common ownership with stationary manufacturing and processing plants which were in operation as of August 24, 1979, and which use earth obtained from such excavation site. . . . Such excavation may be expanded without a permit under this chapter to any contiguous lands which were in common ownership with the site of the plant on August 4, 1989, except as limited by RSA 155-E:4-a, I, II, and III.

*Id.* RSA 155-E:1, V defines "[e]xcavation site" as "any area of contiguous land in common ownership upon which excavation takes place." Whitcomb acquired the one parcel excluded by the superior court in 1992; it obtained the others before August 4, 1989.

The town contends in its brief that the exemption in RSA 155-E:2, III(a) applies only to the parcel containing Whitcomb's stationary manufacturing plant and "to discrete parcels which abut the stationary manufacturing plant and which were acquired by the entity which operated the manufacturing plant on August 24, 1979." Only four of Whitcomb's parcels meet this test, according to the town.

We find no basis for the town's argument in the words of RSA 155-E:2, III(a). An excavation site is exempt from the permit requirements of RSA chapter 155-E if, on August 4, 1989, it was "contiguous to or was contiguous land in common ownership with stationary manufacturing and processing plants which were in operation as of August 24, 1979 and which use earth obtained from such excavation site." RSA 155-E:2, III(a). At issue here are the contiguity and common ownership requirements.

■ ■ Beginning with the contiguity question, we note that the first line of subparagraph III(a) provides an exemption from the statutory permitting requirements in two instances: (1) for excavation sites that were, in 1989, "contiguous to" certain stationary manufacturing plants; and (2) for excavation sites that were "contiguous land in common ownership with" such plants. *Id.* In the first instance, the statute uses the term "contiguous" to define the physical proximity of two areas: the excavation site and the stationary manufacturing plant. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 492 (unabridged ed. 1961) (defining "contiguous" as "touching along boundaries"). In the second instance, it uses the term to describe the bounds of one area: the excavation site. *See id.* (defining "contiguous" as "touching or connected throughout"); *see also* RSA 155-E:1, V ("excavation site" must be an "area of contiguous land"). The town's interpretation of RSA 155-E:2, III(a) ignores the statute's latter use of the term "contiguous." This latter use exempts some excavation sites that do not border stationary manufacturing plants. Because we must give effect to all of the words of a statutory provision, *see Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71, 635 A.2d 465, 467 (1993), we reject the town's construction.

■ The last line of RSA 155-E:2, III(a) permits expansion of exempt excavations "*to any contiguous lands* which were in common ownership with the site of the plant on August 4, 1989." (Emphasis added.) This use of the term "contiguous" contemplates two parcels of land — the excavation site and the expansion area — and defines the physical relationship required between them before the expansion area may qualify for the exemption. Assuming compliance with the other requirements of RSA 155-E:2, III(a), this provision allows new excavation in any area bordering an existing excavation.

■ Turning to the common ownership question, we reject the town's argument that RSA 155-E:2, III(a) exempts only those "discrete parcels . . . which were acquired by the entity which

operated the manufacturing plant on August 24, 1979." The exemption in RSA 155-E:2, III(a) applies to "an excavation site which on August 4, 1989, was contiguous to or was contiguous land in common ownership with stationary manufacturing and processing plants *which were in operation as of August 24, 1979.*" (Emphasis added.) This provision does not require identity between the purchaser of an excavation site and the 1979 owner of the plant. Instead, it requires identity between the excavation site's 1989 owner and the 1989 owner of a plant that was in operation as of August 24, 1979. Moreover, sites that, on August 4, 1989, were "contiguous to" a stationary manufacturing plant in operation in 1979 need not comply with the common ownership condition. *Id.* The common ownership condition applies only to excavation sites that were simply "contiguous land."

The town does not argue that the thirteen parcels ruled exempt by the superior court fail to meet the contiguity and common ownership requirements of RSA 155-E:2, III(a) as we have defined them. We therefore uphold the court's rulings on these issues.

■■■ We now address the town's argument that the exemption in RSA 155-E:2, III(a) does not apply to Whitcomb's blasting operation. Resolution of this issue turns on the definition of "earth." For the RSA 155-E:2, III(a) exemption to apply, the stationary manufacturing plant associated with the excavation at issue must "use earth obtained from such excavation site." *Id.* RSA 155-E:1, I, defines "earth" as "sand, gravel, rock, soil or construction aggregate produced by quarrying, crushing or any other mining activity or such other naturally-occurring unconsolidated materials that normally mask the bedrock." The town concedes that Whitcomb's blasting activity constitutes quarrying and does not dispute that such quarrying produces sand, gravel, soil, or construction aggregate. Thus, under a plain reading of the statutory language, the exemption in RSA 155-E:2, III(a) applies to Whitcomb's blasting operation. *Cf. Penrich, Inc. v. Sullivan,* 140 N.H. 583, 589, 669 A.2d 1363, 1367 (1995) (in determining statute's meaning, court examines statutory language itself and construes law consistently with its plain meaning).

The town nonetheless contends that the RSA 155-E:2, III(a) exemption should not be applied to Whitcomb's blasting operation because doing so would contradict legislative intent. It points out that, prior to 1988, the definition of "earth" in RSA 155-E:1, I, did not include materials produced by quarrying. It argues that the legislature expanded the definition in 1988 to include such materials, Laws 1988, 285:6, in response to *Appeal of Coastal Materials Corp.,*

130 N.H. 98, 102-05, 534 A.2d 398, 400-02 (1987), which held that municipalities had no authority to regulate quarries. The amendment, the town maintains, manifests an intent to grant municipalities *more* control over blasting operations, not less.

The town could be correct concerning the legislature's motivation in enacting the 1988 amendment to RSA 155-E:1, I. The language of RSA 155-E:1, I, and RSA 155-E:2, III(a), however, is plain and unambiguous. It would therefore be inappropriate for us to delve into the statutes' legislative history for a contrary meaning. *See Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994). As Justice Cardozo once wrote: "The wisdom or fairness of the statute, [we] make no attempt to vindicate. Our duty is done when we enforce the law as it is written." *Techt v. Hughes*, 128 N.E. 185, 186 (N.Y.), *cert. denied*, 254 U.S. 643 (1920). The town, in effect, seeks an amendment of RSA 155-E:2, III(a), which we cannot grant. Its recourse lies with the General Court.

We finally note that our interpretation of RSA 155-E:2, III(a) will not transform blasting into a completely unregulated activity. The permitting exception found in RSA 155-E:2, III(a) has limited applicability, and blasting operations must comply with State and federal strictures relating to explosives, 18 U.S.C. §§ 841-48 (1994); RSA ch. 158 (1994 & Supp. 1995).

*Affirmed in part; reversed in part; remanded.*

All concurred.