Sullivan
No. 2006-860

GUILDHALL SAND & GRAVEL, LLC

v.

TOWN OF GOSHEN & a.

Argued: May 23, 2007
Opinion Issued: July 20, 2007

*Ransmeier & Spellman, P.C.*, of Concord (*Timothy E. Britain* and *John T. Alexander* on the brief, and *Mr. Alexander* orally), for the plaintiff.

*Gardner, Fulton & Waugh, P.L.L.C.*, of Lebanon (*H. Bernard Waugh, Jr.* on the brief and orally), for defendant Town of Goshen.

*C. Christine Fillmore*, of Concord, by brief, for the New Hampshire Local Government Center, as *amicus curiae*.

DUGGAN, J. The plaintiff, Guildhall Sand & Gravel, LLC, appeals, and the defendants, the Town of Goshen (Town) and the Town of Goshen Planning Board (planning board), cross-appeal an order of the Superior Court (*Burling*, J.), ruling that certain of the Town's excavation regulations are preempted by state law. We reverse and remand.

*I. Background*

The facts are not in dispute. The plaintiff owns a commercial excavation business, which is located in Goshen and has been in operation since the 1950's. On March 20, 2004, the Town issued to the plaintiff an excavation permit, which will expire during 2007. When the plaintiff applies to renew the permit, its application will be subject to the Town's new excavation

regulations, which were enacted after the plaintiff received the 2004 permit.

In anticipation of this renewal, the plaintiff filed a declaratory judgment action, seeking to have the superior court declare that the Town's new excavation regulations are preempted by RSA chapter 155-E (2002 & Supp. 2006) and are therefore unenforceable. The plaintiff and the Town filed cross-motions for summary judgment. The superior court granted the plaintiff's motion in part, holding that three sections of the Town's ordinance were preempted by RSA chapter 155-E, but that the record was not sufficiently developed to render rulings on the eighteen remaining sections that pertain to excavation.

On appeal, the plaintiff contends that the superior court erred by not ruling upon the validity of all of the ordinance provisions and by not concluding that they all are preempted by RSA chapter 155-E. The Town agrees that the court erred by failing to rule upon the validity of all of the ordinance provisions, but contends that none of them is preempted by RSA chapter 155-E.

## II. Discussion

### A. Preemption and Excavation Regulations

■ Towns are subdivisions of the State and have only such powers as are expressly or impliedly granted to them by the legislature. *Arthur Whitcomb, Inc. v. Town of Carroll*, 141 N.H. 402, 405 (1996). It is well-settled that towns cannot regulate a field that has been preempted by the State. *JTR Colebrook v. Town of Colebrook*, 149 N.H. 767, 770 (2003). Municipal legislation is preempted if it expressly contradicts state law or if it runs counter to the legislative intent underlying a statutory scheme. *Id.* Generally, a detailed and comprehensive state statutory scheme governing a particular field demonstrates legislative intent to preempt that field by placing exclusive control in the State's hands. *Id.* In such circumstances, municipal legislation dealing with that field runs counter to the state statutory scheme. *Id.*

Bearing in mind these general principles, we begin with the point upon which the parties agree: that the superior court erred by not ruling upon the validity of all of the Town's ordinance provisions. The question presented by this case—whether the Town's excavation regulations expressly contradict state law or run counter to the legislative intent— calls for a purely legal analysis that involves scrutinizing the text of the ordinance and the text of the statute. The end result of that analysis necessarily will be that one will or will not be found to impermissibly contradict the other. Further factual development is not necessary to

resolve this textual inquiry. Accordingly, the superior court erred by not ruling upon the validity of all of the Town's excavation regulations. However, whether the Town's excavation regulations are preempted by RSA chapter 155-E constitutes a question of law, which we would review *de novo, Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 770 (2005); thus, we now decide the preemption question rather than direct the superior court to decide it on remand.

Deciding this question requires us to interpret RSA chapter 155-E. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Town of Bethlehem*, 154 N.H. 314, 319 (2006). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.*

We first describe the contours of the statute. The statute distinguishes between excavations that require a permit and those that do not. *See, e.g.,* RSA 155-E:2 (2002). Excavation projects that do not require a permit include certain types of existing excavations, stationary manufacturing plants, and highway excavations, among others. *See* RSA 155-E:2, :2-a (2002). All other excavation projects not specifically enumerated in the statute require a permit. *See* RSA 155-E:2, :2-a. In order to obtain a permit, applicants must submit to the local "regulator" applications that contain certain required information. RSA 155-E:3. Depending upon the circumstances, the regulator is either the locality's planning board, board of selectmen, zoning board of adjustment or county commissioners. RSA 155-E:1, III (Supp. 2006). Subject to the limitations of RSA 155-E:4 (2002), the regulator is authorized to decide whether to grant the permit. RSA 155-E:6 (2002), :7 (Supp. 2006), :8 (2002), :9 (2002) and :10 (2002) describe the processes for amending a permit application, holding hearings on applications, issuing permits, appealing a regulator's decision, and enforcing the requirements of RSA chapter 155-E. RSA 155-E:11 (Supp. 2006) allows the regulator to adopt regulations "reasonably necessary to carry out the provisions of this chapter." Finally, RSA 155-E:4-a (2002), :5 (2002) and :5-a (2002) set forth "minimum" and "express" operational and reclamation standards. The minimum standards apply to excavations that require a permit whereas the express standards apply to excavations that do not require a permit. *See, e.g.,* RSA 155-E:5.

We now determine whether, by enacting this scheme, the legislature intended to preempt the entire field of excavation regulation. For purposes of making this determination, the legislature's use of the phrases

"*minimum* standards" and "*express* standards" in RSA 155-E:4-a and :5 is telling. (Emphasis added.) These two phrases evince a legislative intent that the standards applied to excavations requiring permits and those not requiring permits differ. *See Fischer v. Hooper*, 143 N.H. 585, 588 (1999) (explaining that where legislature uses two different words, it generally means two different things). Whereas the phrase "minimum standards" indicates that more stringent standards may be imposed upon excavations that require a permit, the phrase "express standards" indicates a set of standards that are statutorily required in the case of excavations that do not require a permit. *See Pennichuck Corp. v. City of Nashua*, 152 N.H. 729, 735 (2005) ("The legislature is presumed to know the meaning of words, and to have used the words of a statute advisedly." (quotation omitted)). If the legislature wanted to set particular, absolute or express standards on a statewide basis, regardless of the type of excavation, there would be no need to use the word "minimum." *See Winnacunnet Coop. Sch. Dist. v. Town of Seabrook*, 148 N.H. 519, 525-26 (2002) ("When construing a statute, we must give effect to all words in a statute and presume that the legislature did not enact superfluous or redundant words."). Thus, because the legislature has clearly stated that RSA chapter 155-E contains only "minimum" requirements for excavations that require a permit, it follows that municipalities are not preempted from imposing more stringent regulations upon those types of excavations.

Indeed, the statute authorizes local regulators to promulgate their own regulations. RSA 155-E:11, I ("The regulator may adopt such regulations as may be reasonably necessary to carry out the provisions of this chapter, including adopting a permit fee schedule."). Significant for purposes of the issues before us, the statute also provides, in pertinent part, "Whenever ... local regulations differ from the provisions of this chapter, the provision which imposes the greater restriction or higher standard shall be controlling, except that no local regulation shall supersede the sole applicability of express standards under RSA 155-E:2, I, III, and IV." RSA 155-E:11, I. By acknowledging that local regulations may be more stringent than those in RSA chapter 155-E and underscoring the absolute nature of "express standards," this language unambiguously supports our analysis. It also, of course, means that municipal requirements (for excavations requiring permits) that are less stringent than those imposed by the State, are given no effect. *See* RSA 155-E:4, :4-a, :5, :5-a.

Another aspect of the scheme also supports our analysis. Pursuant to RSA chapter 155-E, local officials—the "regulator"—evaluate the permit applications and issue the required permits. *See, e.g.*, RSA 155-E:8. With this level of local control and involvement in the permitting process, it is

not surprising that the legislature authorized municipalities to regulate these types of excavations.

Although "[t]he words in the statute itself are the touchstone of the legislature's intention," *Appeal of Coastal Materials Corp.*, 130 N.H. 98, 101 (1987), the legislative history also provides compelling clues. *See id.* at 103 (in determining whether legislature intends to preempt a field, it is proper to look to legislative history and the circumstances of a statute's enactment to ascertain legislative intent). For example, in 1991, when the legislature enacted House Bill 742, which generally amended RSA chapter 155-E, it included a statement of purpose, providing:

> I. The general court finds that extensive amendments to RSA 155-E were enacted in 1989, the express purpose of which were to enhance the availability of construction material for the benefit of the citizens and taxpayers of the state of New Hampshire. In the intervening period since the 1989 enactment took effect, various technical problems and unintended policy consequences have resulted in costly litigation and other negative impacts on local communities and residents.
>
> II. *The purpose of this act is to further clarify the definitions of excavations which are exempt from permits under the law but are subject to the express standards set forth in the act and to provide regulators at the local level with clear powers to make such standards more stringent in circumstances where permits are required.* The act is also intended to clarify certain technical and legal uncertainties enacted in the 1989 law and to provide local regulators with powers to ensure environmentally sound site operating procedures and reclamation, and to further clarify the special exception criteria set forth in the 1989 law.

Laws 1991, 310:1 (emphasis added). By distinguishing between permit-exempt projects, which are subject to the express regulations of the statute, and non-exempt projects, which may be subject to more "stringent" local regulation, paragraph II leaves no doubt as to the correctness of our holding today.

The plaintiff, however, contends that our holding in *Arthur Whitcomb*, 141 N.H. at 406, requires us to conclude that the Town's excavation regulations are preempted. In *Arthur Whitcomb*, we held that the legislature intended to preempt the field of excavation, *id.* at 409, and observed that "RSA chapter 155-E, governing the operation and reclamation of excavations, constitutes a comprehensive, detailed regulatory scheme," *id.* at 406. *Arthur Whitcomb*, however, involved a stationary manufacturing plant, which is expressly exempt from having to

obtain a permit. *See* RSA 155-E:2, III. In analyzing whether the legislature intended to preempt the Town of Carroll from regulating the permit-exempt manufacturing plant at issue, we used broad language but correctly reasoned that RSA chapter 155-E does not authorize municipalities to burden that type of excavation with their own substantive requirements. *See Arthur Whitcomb*, 141 N.H. at 408. Deciding *Arthur Whitcomb*, though, did not require us to consider whether a distinction should be made or drawn between permit-exempt and permit-requiring excavations. Thus, while we do not retreat from *Arthur Whitcomb*, we do clarify that its holding applies only to permit-exempt excavations.

The plaintiff also argues that RSA 155-E:11, I, which allows the regulator to adopt regulations "reasonably necessary to carry out the provisions of th[e] chapter," manifests a legislative intent to allow municipalities to enact procedural—but not substantive—regulations pertaining to the excavation permitting process. The plaintiff's argument is undermined by RSA 155-E:11, II, which provides that municipal regulations "may include reasonable provisions for the protection of water resources, consistent with the municipality's local water resources management and protection plan . . . ." Regulations protecting water resources need not be purely procedural. In fact, in its brief, the plaintiff concedes that water resource protection is "one area for *substantive* regulation." (Emphasis added.)

Although the plaintiff contends that RSA 155-E:11, II, means that regulations for the protection of water resources are an exception to what it asserts is the more general rule against substantive regulations found in RSA 155-E:11, I, its argument is not supported by the plain language of the statute. RSA 155-E:11, II, states that such regulations *may include* measures to protect water resources. It in no way limits the regulations to that single substantive area. Accordingly, nothing in the text of RSA 155-E:11 bespeaks any type of general rule or exception as claimed by the plaintiff and we refuse to add language to the statute. *Bethlehem*, 154 N.H. at 319. Thus, we conclude that the statutory scheme envisions that municipalities will promulgate substantive regulations, as the Town did here. And with that conclusion, our inquiry ends because the plaintiff does not argue that the particular regulations at issue in this case are not "reasonably necessary" as a substantive matter. *See* RSA 155-E:11, I.

### B. The Town's Ordinance

■ The superior court ruled that section III, 4, A, section III, 4-a, A and section III, 4-a, B of the Town's ordinance are preempted because they establish setback requirements that are more stringent than those contained in RSA chapter 155-E. If these sections purported to regulate

excavations that do not require a permit, then, consistent with our holding in *Arthur Whitcomb*, they would be preempted. However, the ordinance expressly provides that it "appl[ies] solely to commercial excavations over which the Planning Board has authority under RSA 155-E. Excavation for a land-owner's personal use of material on the same land where it is excavated, as well as those excavations exempted from permits under RSA 155-E:2 and :2-a, are exempt from these regulations." Thus, by its own terms, the ordinance applies only to excavations requiring a permit. By limiting itself in this way, the ordinance fits snugly within the scope of permissible municipal regulation under RSA chapter 155-E. It follows that the more stringent requirements set forth in the ordinance are not preempted and the superior court erred in reaching a contrary conclusion.

*III. Conclusion*

For the foregoing reasons, we conclude that RSA chapter 155-E authorizes municipalities, in the context of excavations that require a permit, to impose regulations more stringent than those contained in the statute. The Town's ordinance does just that and is therefore not preempted.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.