Strafford, }
Feb. 4, 1902. }

### STATE *v.* ANGELO.

### SAME *v.* SAME.

Fruits commonly used as articles of food are "provisions," within the meaning of that word as used in section 1, chapter 76, Laws 1897, relating to hawkers and peddlers.

The power conferred upon city councils to make ordinances relative to licensing hawkers and peddlers is suspended in operation by an act of the legislature of general application upon the same subject.

A city ordinance is invalid when it is repugnant to or inconsistent with a general statute of the state, or when a license provided for therein is so excessive as to be an obvious exercise of the power of taxation.

INFORMATIONS, filed by the attorney-general, for peddling without a license,— the first for violation of the provisions of chapter 76 of the Laws of 1897, and the second for violation of the provisions of an ordinance of the city of Somersworth. The defendant admitted the allegations of the informations, namely, that in August, 1901, at Somersworth, he peddled, without a license, peaches and foreign fruits consisting of bananas, oranges, lemons, and pineapples. The ordinance under which the second information was filed is as follows: "Every agent, peddler, or street hawker, selling at retail household furniture, farming implements, dry-goods, gents' clothing, boots and shoes, carpets or rugs, glassware, drugs and medicines, clocks or jewelry, foreign fruits, tea, coffee, or groceries, not pertaining to farm products, shall, for the privilege of selling any of the said goods and wares, in and within the city limits of Somersworth, pay the city clerk of the city of Somersworth a monthly tax or license of ten dollars per month; such license to be first subject to the approval of the mayor, and also may be revoked by the mayor."

The defendant moved to quash the informations,— the first one on the ground that the fruits above named were provisions, and the second on the ground that the ordinance was invalid. The motions were denied *pro forma*, subject to the defendant's exception. Transferred from the September term, 1901, of the superior court by *Wallace*, C. J.

*Walter W. Scott*, solicitor, for the state.

*James A. Edgerly*, for the defendant.

CHASE, J.  1.  "No person shall do any business as a hawker or peddler, or go about from town to town, or from place to place in the same town, exposing for sale or selling any goods, wares, or merchandise, other than provisions, agricultural imple-- ments, fruit trees and ornamental trees, vines, shrubs, books, newspapers, pamphlets, the products of his own labor or the labor of his family, and the product of his own farm or the one which he tills, the manufacturers of furniture and ladders excepted, until he shall have procured a license so to do as hereinafter provided." Laws 1897, *c.* 76, *s.* 1.  The license is issued by the secretary of state, upon the filing with him by the applicant of a certificate by a mayor of a city or the majority of the selectmen of a town, that the applicant is of good moral character; and it authorizes the licensee to peddle in the towns named in it or in the state at. large, as the case may be, for the term of one year, upon payment. of the specified fees.  *Ib., ss.* 2, 3, 4, 5, 6.  Whoever peddles. contrary to the provisions of the statute may be punished by a fine: not exceeding $200, or by imprisonment for a term not exceeding: six months, or by both.  *Ib., s.* 8.  Were the fruits which the: defendant peddled "provisions" within the meaning of this stat- ute?  A review of the legislation on the subject will aid in decid- ing the question.

From 1714 to 1792 peddling was entirely prohibited under a penalty of twenty pounds.  In 1821 an act was passed prohibit- ing persons from exercising the business of peddling goods, wares,. or merchandise other than "articles, the growth, produce, or man- ufacture of the United States," with certain exceptions, without a. license obtained from the justices of the court of sessions.  The applicant was required to produce satisfactory evidence that he sustained a good moral character to entitle himself to a license ;: and if licensed, was to pay the county treasurer $12 for the use of the county.  Peddling without a license was punishable by a. forfeiture of $10 to $50.  Laws 1821, *c.* 31 ; R. S., *c.* 124.  In 1846 the license fee and the penalty for a violation of the law were increased, and the articles exempted from the operation of the law were limited to those grown, produced, or manufactured in the state.  Laws 1846, *c.* 344.

In 1847 the statute was recast (Laws 1847, *c.* 491), the princi- pal change being the introduction of a difference in the license fees to be paid by resident and non-resident licensees — a distinction: that was continued in one form or another in several of the subse-- quent statutes, and that was finally held to be in conflict with pro- visions of the constitution of the United States.  *Bliss' Petition*, 63 N. H. 135; *State* v. *Lancaster*, 63 N. H. 267.  In subsequent.

years the subject was fruitful in legislation. Laws 1847, *c.* 491; Laws 1848, *c.* 734; Laws 1853, *c.* 1413; Laws 1858, *c.* 2086. The last-named act provided (*s.* 3) that nothing contained in it should prevent a " citizen of this state from selling any fish, fruit, provisions, farming utensils, or other articles lawfully raised or manufactured in this state." This was the first act in which fruit and provisions were specifically exempted from the license requirement. The act of 1859 and the General Statutes contained a long list of exempted articles, among which were fish, fruits, vegetables, provisions, and live animals. Laws 1859, *c.* 2212, *s.* 2; G. S., *c.* 108, *s.* 3. The acts of 1878, 1887, and 1893 (each of which covered the subject of licensing hawkers and peddlers, and repealed all inconsistent acts), the General Laws, and the Public Statutes were less comprehensive and less particular in the enumeration of exempted articles. The act of 1878 and the General Laws mentioned fruits and provisions, and also fish and vegetables, which may be classed as provisions; the acts of 1887 and 1893 and the Public Statutes mentioned fish, vegetables, meat, milk, and bread, all of which may be classed as provisions, but did not contain the general term; and they also mention fruit. Laws 1878, *c.* 27, *s.* 2; G. L., *c.* 119, *s.* 2; Laws 1887, *c.* 68, *s.* 2; P. S., *c.* 123, *s.* 2; Laws 1893, *c.* 65, *s.* 2. In the act under which this information was filed, the general term " provisions " is used without any specification. Section 1, above quoted. It cannot be doubted that this term was understood to include fish, vegetables, meat, milk, and bread — articles specified in the statutes immediately preceding it. The probability is great that it was understood to include also what was designated " fruit " in the earlier statutes. The framers of the act used general terms to describe the exempted articles instead of attempting to specify the articles, as in previous statutes. They also avoided some of the repetitions found in other acts. An ordinary meaning of the word " provisions " is food, victuals, eatables. Fruits, especially apples, pears, peaches, bananas, oranges, and pine-apples, supply nutriment to the body, and are food. The use of them has largely increased in the last forty years, and there is now less occasion than formerly to use the term " fruits," in addition to the term " provisions," to describe them. No reason has been suggested and none has occurred to the court why the policy of the state which had exempted fruit from the operation of these stat utes since 1858 should be changed at this time. The danger that the public will be imposed upon by peddlers of fruit is certainly no greater than the danger that they will be imposed upon by peddlers of articles classed as provisions according to the most restricted sense of the word. Neither can the peddling of fruit seriously interfere with the business of permanently established local traders,—

at least, any more than the peddling of meat, bread, etc. If lemons do not supply nutriment to the body, they supply a flavoring for various kinds of food. In *King* v. *Hodgkinson*, 10 B. & C. 74, it was held that barm or yeast was victuals, within the meaning of the exempting clause of the hawkers' and peddlers' act of 50 Geo. III, *c.* 41, which provided that nothing in the act should prohibit persons from selling " any fish, fruit, or victuals," etc. Lord *Tenterden*, C. J., said : " I think the word victuals in the 50 Geo. III, *c.* 41, *s.* 23, comprises everything which constitutes an ingredient in the food of man, and all articles which mixed with others constitute food." See, also, *Plummer* v. *Currier*, 52 N. H. 287, 297. There is equally good reason for believing that the word " provisions " in the act under consideration was intended to comprise lemons as well as bananas, oranges, pineapples, and peaches. If the word was used in this sense, the exemptions specified in the act of 1897 correspond substantially with those specified in chapter 123, Public Statutes, and the reason for the enactment of the act of 1897 must be found in some other of its provisions. The substitution of the secretary of state for the clerk of the supreme court as the officer to grant the license, the separation of the provisions relating to hawkers and peddlers from those relating to transient or itinerant vendors, and the changes in the scope of licenses and the amount of fees to be paid therefor afford unmistakable evidence of the reason why the act of 1897 was passed. Compare Public Statutes, chapter 123, with Laws 1897, chapters 46 and 76, in these respects.

If it is doubtful whether the word "provisions" was intended to include fruits, the defendant should have the benefit of the doubt. " In the legal construction of the law, as well as in weighing the evidence of facts, the defendant in a criminal cause is entitled to the benefit of reasonable doubt, on the ground that the legislature could not have intended a defendant should be convicted under the law unless the facts brought his case so plainly within the terms used as to leave no reasonable doubt." *State* v. *Wilson*, 47 N. H. 101, 106.

For these reasons it is held that according to the intention of the legislature the word "provisions," in the act of 1897, comprises fruits such as those named in the first information, and consequently that the information sets forth no offence within the meaning of the act, and should be quashed.

2. Is the Somersworth ordinance valid ? It is alleged in behalf of the state that the city councils of Somersworth had power to enact an ordinance of this kind, by virtue of the following provision of the statutes: " The city councils . . . may make, establish, publish, alter, modify, amend, and repeal ordinances,

rules, regulations, and by-laws for the following purposes: . . . Relative to licensing and regulating butchers, petty grocers or hucksters, peddlers, hawkers, and common victualers, . . . under such limitations and restrictions as to them shall appear necessary." The power is subject to this important limitation: "No by-law or ordinance shall be repugnant to the constitution or laws of the state." P. S., c. 50, s. 10, cl. XIV. "In the nature of things, such legislation must not be inconsistent with the laws of this state, and must be subject to the revision and repeal of the legislature of the state." *State* v. *Noyes*, 30 N. H. 279, 293.

By comparing the ordinance with chapter 76, Laws 1897, it will be seen that the statute embraces the whole subject that is covered by the ordinance, and that the provisions of the one are inconsistent with those of the other. The statute applies to the whole state. There is nothing in it which shows or tends to show an intention on the part of the legislature to exempt any town from its operation under any circumstances. It prohibits persons who are not licensed under it and have not paid the fees prescribed by it from doing business as hawkers and peddlers in Somersworth the same as in other towns. A license issued under the ordinance of Somersworth would be no answer to an indictment for violating the provisions of the statute. A person holding a license under the statute and paying the prescribed fees "may sell as aforesaid [as a hawker or peddler] . . . any goods, wares, or merchandise," the sale of which is not prohibited by law; or, as it is expressed in another section, "may do business as a hawker or peddler" in the territory mentioned in his license. *Ib.*, ss. 3, 5. The ordinance, if valid, would nullify this authority. It is inconsistent with the statute in other particulars. The systems of law created by the two cannot stand together. Under these circumstances the provisions of the statute are paramount. 1 Dill. Mun. Cor. (4th ed.), ss. 317, 319, 329, 367; *St. Johnsbury* v. *Thompson*, 59 Vt. 300; *Southport* v. *Ogden*, 23 Conn. 128; *Polinsky* v. *People*, 73 N. Y. 65, 70; *Adams* v. *Mayor of Albany*, 29 Ga. 56. The power conferred upon city councils by section 10, chapter 50, Public Statutes, is suspended in operation while the act of 1897 is in force, and was suspended while the earlier similar statutes were in force. The city's power in such cases resembles in this respect the power of a state, as against the United States, to pass insolvent laws in the nature of bankruptcy laws. *Rowe* v. *Page*, 54 N. H. 190.

Even if city councils had power to pass ordinances upon the subject, the Somersworth ordinance would be invalid. Power to license the engaging in useful trades and employments cannot be exercised as a means of taxation, with a view to revenue, unless

such appears to have been the legislative intent. The license fee "should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. If the state intends to give broader authority, it is reasonable to infer that it will do so in unequivocal terms." Cool. Tax. 408; Cool. Con. Lim. (6th ed.) 242; 1 Dill. Mun. Cor. (4th ed.), s. 357; 2 Ib., s. 763; State v. Express Co., 60 N. H. 219, 260, 261; North Hudson R'y v. Hoboken, 41 N. J. Law 71; Muhlenbrinck v. Commissioners, 42 N. J. Law 364; Clark v. New Brunswick, 43 N. J. Law 175; Vansant v. Stage Co., 59 Md. 330; State v. Bean, 91 N. C. 554; Mayo v. Cincinnati, 1 Ohio St. 268. There is, and in view of its terms can be, no pretence that section 10, chapter 50, Public Statutes, authorizes city councils to tax peddlers or their business. The power granted by it, so far as peddlers are concerned, is limited to the making of ordinances "relative to licensing and regulating" them. In State v. Bean, a fee of three dollars a month, required by an ordinance for the license of butchers, was held to be a tax rather than a license fee, and to render the ordinance void. The Somersworth ordinance requires the licensee to pay "a monthly tax or license of ten dollars," or $120 a year. The act of 1897 shows what the legislature regarded as "the necessary or probable expense of issuing the license, and of inspecting and regulating the business which it covers." For a license to a peddler doing business in a town of the size of Somersworth,— containing between 7,000 and 8,000 inhabitants,— it requires the payment of the fee of $1 to the secretary of state and a fee of $15 to the treasurer of the town, or in all only $13\frac{1}{3}$ per cent of the amount required by the ordinance. A license for the state at large can be obtained for $52, or less than half of the fees required by the ordinance. There is nothing in the nature of the business of selling fruit that requires an extraordinary expenditure of time and money in its inspection and regulation. The "tax or license" required by the ordinance is unreasonable and unauthorized, and would render the ordinance void if it were not so for the reason above stated.

The defendant's motion to quash the second information should have been granted.

*Exceptions sustained.*

All concurred.