Hillsborough-northern judicial district
No. 96-007

CASICO, INC.

v.

CITY OF MANCHESTER

September 26, 1997

*Upshall, Cooper & Temple, P.A.*, of Concord (*Frederick E. Upshall, Jr.* on the brief and orally), for the plaintiff.

*Thomas I. Arnold, III*, assistant city solicitor, by brief and orally, for the defendant.

*Steven M. Houran*, acting attorney general (*Martha A. Moore*, assistant attorney general, on the brief, and *Douglas N. Jones*, assistant attorney general, orally), for the State, as *amicus curiae*.

*Hall, Hess, Kenison, Stewart, Murphy & Keefe, P.A.*, of Manchester (*Kathryn B. Johnston* on the brief), for the Neighborhood Concerns Committee, as *amicus curiae*.

HORTON, J. In this declaratory judgment action, the Superior Court (*Conboy*, J.) ruled that the State statutory scheme governing the sale and distribution of alcoholic beverages, *see* RSA chs. 175-180 (1994 & Supp. 1996) (amended 1997), preempts an ordinance of the defendant, City of Manchester (city). The ordinance requires a city-issued license, independent of the license required by the State, for certain on-premises sales of alcoholic beverages. The court ruled in favor of the plaintiff, Casico, Inc., on the preemption

issue, but denied the plaintiff's request for attorney's fees. The city appeals the preemption ruling; the plaintiff cross-appeals the denial of its request for attorney's fees. We affirm.

The following facts are undisputed. The plaintiff operates night clubs on Second Street in Manchester. Since 1992, the plaintiff has been licensed by the New Hampshire Liquor Commission to serve alcoholic beverages at that location. *See* RSA ch. 178 (1994 & Supp. 1996) (amended 1997).

In April 1994, the city enacted "An Ordinance Establishing a Licensing System to Regulate the Operation of Establishments Selling, Dispensing or Distributing Alcoholic Beverages within the City of Manchester (so-called Bar Licensure)" (the ordinance). According to the ordinance, "no establishment shall sell, dispense, distribute or permit any on premises consumption of any alcoholic beverage without first having obtained the license to operate required by" the ordinance. The ordinance contains additional provisions concerning grounds for denying a license application and for revoking an existing license.

In December 1994, the city issued the plaintiff a license pursuant to the ordinance. The plaintiff's city-issued license was revoked by the city clerk in February 1995 following a police complaint alleging that the plaintiff had violated certain provisions of the ordinance. The revocation was subsequently reversed in March 1995 by the city's committee on administration.

Prior to the city clerk's decision, the plaintiff filed a petition for declaratory judgment and injunctive relief alleging, among other things, that the ordinance was preempted by the State statutory scheme governing the sale and distribution of alcoholic beverages. Following the decision of the committee on administration, the plaintiff filed an amended petition for declaratory relief on the same grounds.

The superior court ruled:

In light of the state's comprehensive statute and regulations governing every aspect of the liquor industry, the Court finds that state law has preempted the field of the manufacture, sale and distribution of intoxicating beverages. Therefore, municipalities, including the city, may not regulate in this area. . . . Because state law preempts the field, the city lacks the power to enact such an ordinance, and therefore, the ordinance is void.

The court denied the plaintiff's request for attorney's fees, reasoning that the city did not interfere with a clearly defined legal right

of the plaintiff, *see Keenan v. Fearon*, 130 N.H. 494, 501-02, 543 A.2d 1379, 1383 (1988), because "[t]here is no directly relevant precedent in New Hampshire clearly defining a municipality's authority to license businesses that sell liquor." This appeal by the city and cross-appeal by the plaintiff followed.

## I. Preemption

■ ■ The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law. *See Arthur Whitcomb, Inc. v. Town of Carroll*, 141 N.H. 402, 406, 686 A.2d 743, 745 (1996). Municipal legislation is therefore preempted if it expressly contradicts State law or "runs counter to the legislative intent underlying a statutory scheme." *Id.* (quotation omitted); *see Public Serv. Co. v. Town of Hampton*, 120 N.H. 68, 71, 411 A.2d 164, 166 (1980) (per curiam). The enactment of a detailed and comprehensive State regulatory scheme governing a particular field often demonstrates the State's intent to preempt that field by placing exclusive control in the State's hands. *See, e.g., Arthur Whitcomb, Inc.*, 141 N.H. at 406, 686 A.2d at 745; *Town of Pelham v. Browning Ferris. Indus.*, 141 N.H. 355, 362-63, 683 A.2d 536, 541 (1996); *Wasserman v. City of Lebanon*, 124 N.H. 538, 542-43, 474 A.2d 994, 998 (1984). In such circumstances, municipal legislation dealing with that field "runs counter" to the State statutory scheme. *See, e.g., Arthur Whitcomb, Inc.*, 141 N.H. at 406, 686 A.2d at 745; *Public Serv. Co.*, 120 N.H. at 71, 411 A.2d at 166.

The city acknowledges that the State statutory scheme governing the sale and distribution of alcoholic beverages could be characterized as comprehensive and detailed as to various subjects, such as wine manufacturers, *see* RSA 178:6 (1994), and wholesale distributors, *see* RSA 178:13 (1994) (amended 1997). The city argues, however, that the specific "area of liquor sales which the City seeks to regulate, the sale of alcoholic beverages for consumption on the premises, is not subject to comprehensive state regulation."

In confronting a different issue, we described the State regulatory scheme at issue here as a "comprehensive statutory framework for controlling the production and distribution of intoxicating liquors." *Hickingbotham v. Burke*, 140 N.H. 28, 30, 662 A.2d 297, 299 (1995). We further noted that "[s]ince the repeal of Prohibition, virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature." *Id.* at 32, 662 A.2d at 300 (quotation omitted). Indeed, some of the aspects covered by the statutory scheme include the impermissibility of opening a State liquor store for business on certain holidays, *see*

RSA 177:5 (Supp. 1996), the contents and timing of reports to be filed by various licensees, see RSA 179:14 (1994), the allowable hours of operation for different types of licensees, see RSA 179:17, II (Supp. 1996), and the permissibility of distributing product samples, see RSA 179:31, II (Supp. 1996).

Contrary to the city's contention, the comprehensiveness of the statutory scheme also extends to the licensing and regulation of on-premises sales of alcoholic beverages — the very area that the city seeks to regulate through the ordinance. For example, RSA 178:19, I(a) (1994) and RSA 178:20, I (1994) both provide that a State-issued license "shall entitle the licensee to serve" specified alcoholic beverages for on-premises consumption. Additional statutory provisions not only govern the contents of license applications, see RSA 178:24 (1994 & Supp. 1996), and the suspension or revocation of licenses, see RSA 179:57 (1994 & Supp. 1996) (amended 1997), but also regulate subjects ranging from the location for storage of surplus alcoholic beverages, see RSA 179:49 (1994), and the placement of draught beer taps, see RSA 179:54 (1994), to the use of darts, see RSA 179:19, VI (Supp. 1996), and the provision of free drinks, see RSA 179:44, I (Supp. 1996).

 Our conclusion that the State regulatory scheme is comprehensive and detailed does not end the preemption inquiry, however, because a comprehensive scheme could nonetheless authorize additional municipal regulation. Cf. Arthur Whitcomb, Inc., 141 N.H. at 407-08, 686 A.2d at 746-47 (concluding that comprehensive statutory scheme did not authorize additional local regulation). Here, the city contends that the State statutory scheme specifically contemplates municipal involvement in regulating the sale and distribution of alcoholic beverages. See, e.g., RSA 178:21, II (1994) (State may permit certain licensees to serve alcoholic beverages in "an outside cafe-style area where licensed by ordinance and with written approval of town or city officials"); RSA 179:25, III (Supp. 1996) (requiring exterior signs to conform with "city or town requirements"). The city therefore argues that there is "no legislative intent to preempt municipal authority to regulate the sale of liquor." We disagree. The existence of provisions in the statutory scheme that contemplate limited municipal regulation actually bolsters a preemption conclusion. "Had the legislature not intended to preempt local ordinances and regulations pertaining to [on-premises distribution of alcoholic beverages], there would be no need for [these] provision[s]." Arthur Whitcomb, Inc., 141 N.H. at 408, 686 A.2d at 747.

Pointing to RSA 47:17, IV (1991), the city also argues that the State has expressly authorized municipal regulation of liquor sales. RSA 47:17, IV provides that "city councils . . . may make, establish, publish, alter, modify, amend and repeal ordinances, rules, regulations, and bylaws" pertaining to the "sale of liquor." The city contends that the legislature's failure to repeal RSA 47:17, IV, when it enacted the statutory scheme governing the sale and distribution of alcoholic beverages militates against preemption. The plaintiff, joined by the State as *amicus*, counters with RSA 47:17, XV (1991), which provides that "no bylaw or ordinance shall be repugnant to the constitution or laws of the state."

We have previously addressed preemption in a case involving a comprehensive statute regulating the licensing of a particular subject and a statute authorizing cities to license and regulate the same subject matter. *See State v. Angelo*, 71 N.H. 224, 227-28, 51 A. 905, 907 (1902). In *Angelo*, a statute required a State-issued license to peddle or hawk various goods, except fruit. *See id.* at 225-27, 51 A. at 906-07. A different statute also authorized cities to regulate the licensing of peddlers and hawkers. *See id.* at 227-28, 51 A. at 907. Based on the latter statute, the city of Somersworth enacted an ordinance requiring a city-issued license as a precondition to peddling or hawking various items, including fruit, in the city. *See id.* at 224, 51 A. at 905-06. Relying on the predecessor to RSA 47:17, XV, we held the ordinance invalid because the State licensing statute "embrace[d] the whole subject that [was] covered by the ordinance." *Id.* at 228, 51 A. at 907. We concluded that the general licensing authority conferred on cities by the State was "suspended in operation" while the State licensing statute remained in force. *Id.*

■ As in *Angelo*, the State statutory scheme governing the licensing and regulation of on-premises sales of alcoholic beverages embraces the whole subject covered by the city's licensing ordinance. *See id.* Furthermore, the city's ordinance could nullify the authority granted to the holder of a State-issued license. *Cf. id.*

■ We hold that the superior court correctly concluded that the city's licensing ordinance is invalid because it is preempted by State law. We do not conclude, however, that all municipal regulations affecting State licensees are void. The State statutory scheme "preempts only local ordinances and regulations that would have the effect or intent of frustrating State authority." *Arthur Whitcomb, Inc.*, 141 N.H. at 409, 686 A.2d at 747 (quotation omitted). If "administered in good faith and without exclusionary effect," municipal regulations that do not purport to license the sale or

distribution of alcoholic beverages, and that neither conflict with State law nor address matters covered by the State statutory scheme, "may validly be applied" to State licensees. *Id.* (quotation omitted).

## II. Attorney's Fees

The plaintiff argues that the superior court erred in denying its request for attorney's fees. Although recognizing the general rule that parties are responsible for their own attorney's fees, *see White v. Francoeur*, 138 N.H. 307, 309, 638 A.2d 1250, 1251 (1994), the plaintiff contends that the city interfered with a clearly defined and established right of the plaintiff to serve alcoholic beverages pursuant to a State license. The plaintiff therefore relies on a recognized exception to the general rule: attorney's fees may be awarded when "an individual is forced to seek judicial assistance to secure a clearly defined and established right." *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

"We give tremendous deference to a superior court decision on attorney's fees." *Board of Water Comm'rs, Laconia Water Works v. Mooney*, 139 N.H. 621, 628, 660 A.2d 1121, 1126 (1995) (quotation omitted). Here, we find no abuse of discretion in the court's denial of the plaintiff's request for attorney's fees. *See Quirk v. Town of New Boston*, 140 N.H. 124, 133, 663 A.2d 1328, 1335 (1995). As the superior court reasoned, no direct precedent established the preemptive effect of the State regulatory scheme governing the sale and distribution of alcoholic beverages. *See White*, 138 N.H. at 310, 638 A.2d at 1252. Accordingly, the court could properly determine that the preemption issue, including the significance of RSA 47:17, IV, was a fair and reasonable ground for litigation. *See Dumont v. Town of Wolfeboro*, 137 N.H. 1, 11, 622 A.2d 1238, 1244 (1993).

*Affirmed.*

BROCK, C.J., did not participate in the decision of this case; BRODERICK, J., did not sit; the others concurred.