Coos
No. 2003-085

JTR COLEBROOK, INC. D/B/A THE COLEBROOK HOUSE

v.

TOWN OF COLEBROOK

Argued: July 10, 2003
Opinion Issued: August 19, 2003

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*James Q. Shirley* and *James P. Harris* on the brief, and *Mr. Harris* orally), for the petitioner.

*Mitchell & Bates, P.A.*, of Laconia (*Timothy Bates* on the brief and orally), for the respondent.

*Peter W. Heed*, attorney general (*Mary P. Castelli*, senior assistant attorney general, on the brief), for the State, as *amicus curiae*.

*Finis E. Williams, III*, of Concord, by brief, for American Heart Association, American Lung Association of New Hampshire, American Cancer Society, New Hampshire Medical Society, New Hampshire Public Health Association, Smoke-Free New Hampshire Alliance, and Tobacco Control Resource Center, Inc., as *amici curiae*.

BRODERICK, J. The petitioner, JTR Colebrook, Inc. d/b/a The Colebrook House (the Colebrook House), a restaurant, appeals from the order of the Superior Court (*Perkins*, J.) upholding the no-smoking ordinance of the respondent, the Town of Colebrook (town). We reverse.

The relevant facts follow. In the spring of 2002, the town passed the "Environmental Tobacco Smoke Regulations for Restaurants" ordinance, the stated purpose of which is to "protect and improve the public health and welfare by prohibiting smoking in restaurants" in recognition of "the right of those who wish to breath [*sic*] smoke-free air." After the ordinance was enacted, the town's board of health adopted it as a health regulation pursuant to RSA 147:1, I (1996).

The ordinance prohibits smoking in "any restaurant." It contains an exception for restaurant cocktail lounges that are "effectively segregated from any non-smoking area." To be "effectively segregated," a smoking area and a non-smoking area must be separated by an enclosed place.

There must also be a "continuous, physical barrier such as a wall . . . (that spans from the floor to the ceiling) that separates the no-smoking from a smoking-permitted area." In addition, for cocktail lounges, "up to 30 cubic feet per minute of outdoor air per occupant" must be provided for 100 people per 1,000 square feet and more air must be exhausted from the room than is supplied to it.

In August 2002, the Colebrook House sought a declaration that the State Indoor Smoking Act preempted the ordinance. *See* RSA 155:64-:77 (2002). The Act became effective in January 1991. Its stated purpose "is to protect the health of the public by regulating smoking in enclosed workplaces and enclosed places accessible to the public, regardless of whether publicly or privately owned, and in enclosed publicly owned buildings and offices." RSA 155:64. "[N]otwithstanding any law to the contrary," and except as provided in RSA 155:67, the Act prohibits smoking in "[a]ll enclosed places of public access and publicly owned buildings and offices, including workplaces, except in effectively segregated smoking-permitted areas." RSA 155:66. "If smoking cannot be effectively segregated in any such enclosed place," then it is "totally prohibited." *Id.* The Act defines an "enclosed place" as "a structurally enclosed location, or portion of such location, enclosed by a floor, ceiling, and 3 or 4 solid walls, partitions, or windows, exclusive of doors or passageways." RSA 155:65, VI.

"Effectively segregated" means that the following conditions are met: (1) procedures for accurately and fairly determining smoking preference have been followed; (2) the size and location of no-smoking and smoking-permitted areas are designed so that smoke does not "harm or unreasonably intrude" into the no-smoking area; (3) a contiguous portion of the enclosed public place measures a minimum of 200 square feet; (4) there is either a continuous, physical barrier of at least fifty-six inches in height or a space of at least four feet in width to separate the no-smoking and smoking areas; and (5) in buildings with existing ventilation systems, designated smoking areas are proximate to exhaust vents. RSA 155:65, V.

The Act exempts from its provisions restaurants seating fewer than fifty people and cocktail lounges, among other places. RSA 155:67, VIII-IX. The Act requires that those in charge of enclosed places in which smoking is prohibited and of designated smoking-permitted areas develop written policies and procedures relative to complying with the Act. RSA 155:68, :69.

The Act authorizes the Commissioner of the New Hampshire Department of Health and Human Services to adopt rules relating to, among other things, criteria for smoking-permitted areas that effectively segregate such areas, and procedures for resolving complaints regarding

the failure to comply with the Act. RSA 155:71. Individuals who smoke in designated no-smoking areas are guilty of a violation-level offense for which they may be fined no less than $100. RSA 155:76.

■ The sole issue for our review is whether the State Indoor Smoking Act preempts the town ordinance. "It is well settled that towns cannot regulate a field that has been preempted by the State." *Town of Hooksett v. Baines*, 148 N.H. 625, 627 (2002). Municipal legislation is preempted if it expressly contradicts State law or if it runs counter to the legislative intent underlying a statutory scheme. *Casico v. City of Manchester*, 142 N.H. 312, 315 (1997). Generally, a detailed and comprehensive State statutory scheme governing a particular field demonstrates legislative intent to preempt that field by placing exclusive control in the State's hands. *Id.* "In such circumstances, municipal legislation dealing with that field 'runs counter' to the State statutory scheme." *Id.*

The State Indoor Smoking Act contains detailed provisions governing the circumstances under which smoking may be allowed in restaurants, defining, for instance, in minute detail, the term "effectively segregated" down to the square footage of permissible smoking areas. *See* RSA 155:65, :69. It provides for State rulemaking and enforcement, including detailed provisions governing complaints and investigations, waivers, and penalties for non-compliance. *See* RSA 155:71-:76.

■ We hold that the State Indoor Smoking Act constitutes a comprehensive and detailed scheme that regulates smoking in restaurants. A "conclusion that the State regulatory scheme is comprehensive and detailed does not end the preemption inquiry, however, because a comprehensive scheme could nonetheless authorize additional municipal regulation." *Casico*, 142 N.H. at 316. The town argues that RSA 155:77 allows additional municipal regulation of smoking in restaurants to protect the public health. We disagree.

"We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include." *Baines*, 148 N.H. at 630 (quotation omitted). When construing a statute's meaning, we first examine the language found in the statute. *McKenzie v. City of Berlin*, 145 N.H. 467, 470 (2000). "Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *Cross v. Brown*, 148 N.H. 485, 486 (2002). We must construe this statutory provision in a manner that is "consistent with the spirit and

objectives of the legislation as a whole." *Stablex Corp. v. Town of Hooksett,* 122 N.H. 1091, 1102 (1982) (quotation omitted).

RSA 155:77 provides that: "Nothing in this subdivision shall be construed to permit smoking where smoking is prohibited by any other provision of law or rule relative to fire protection, safety and sanitation." We interpret this provision according to its plain meaning and hold that it permits additional municipal regulation of smoking only with respect to fire protection, safety and sanitation, not with respect to public health. *See LDM, Inc. v. Princeton Reg. Health,* 764 A.2d 507, 518 (N.J. Super. Ct. Law Div. 2000) (interpreting similar provision of New Jersey statute and holding that "[t]he authority of the municipality to restrict smoking in restaurants is limited to protecting life and property from fire").

The comprehensiveness of the State Indoor Smoking Act's regulation of smoking in restaurants dictates against the town's construction of RSA 155:77. As the New Jersey Superior Court observed when faced with a similar argument:

> The State Legislature promulgated requirements designed to regulate when, where, and under what circumstances smoking is allowed. Their varying requirements seek to balance the rights of smokers and nonsmokers, a balance that would be thwarted by municipal smoking bans like that under challenge.

*LDM, Inc.,* 764 A.2d at 526. The New Hampshire law likewise reflects a careful balancing of the rights of smokers and non-smokers. As its senate sponsor noted, the law was intended to replace ten years of no-smoking legislation with a more comprehensive law that "provides equal protection to the 73 percent of non-smokers in both the public and the private sectors while still providing reasonable accommodation to the 27 percent of those who are smokers." N.H.S. JOUR. 140 (1990). We regard it as highly improbable that the legislature, after establishing detailed guidelines and having considered and balanced multiple interests, intended to leave the ultimate public health regulation of indoor restaurant smoking to the vagaries of local regulation. *See Public Serv. Co. v. Town of Hampton,* 120 N.H. 68, 71 (1980); *Stablex Corp.,* 122 N.H. at 1102.

The town argues that because the word "sanitation" is related to "public health," and because RSA 147:1, I, generally grants towns authority to regulate to protect the public health, RSA 155:77 preserves local authority to enact no-smoking standards that are more stringent than those under State law. Such an interpretation is strained at best.

Had the legislature intended to permit municipalities to enact stricter no-smoking standards to protect the public health, it could have explicitly

done so. In other statutory schemes, the legislature has explicitly authorized localities to enact more stringent requirements than those provided under State law. *See* RSA 485-C:20 (2001) ("Nothing in this chapter shall be deemed to preempt the authority of municipalities, under other statutes, to enact local ordinances or regulations affecting groundwater, other than groundwater withdrawals; provided, however, that requirements imposed under this chapter shall be considered as minimum."); RSA 205-C:2, III (Supp. 2002) ("Nothing in this chapter shall be construed as . . . superseding any local law . . . and all modular buildings and building components shall comply with all applicable state or local building requirements that exceed the modular building code . . . ."). We would therefore regard it as incongruous for the legislature to rely obliquely upon the reference to sanitation as establishing local control over smoking in restaurants to protect the public health. *See Town of Pelham v. Browning Ferris Indus. of N.H.*, 141 N.H. 355, 363 (1996).

The town's argument rests upon an overly broad interpretation of RSA 147:1, I. That statutory provision permits town health officers to "make regulations for the prevention and removal of nuisances, and such other regulations relating to public health as in their judgment the health and safety of the people require." It is part of a statutory scheme entitled, "NUISANCES; TOILETS; DRAINS; EXPECTORATION; RUBBISH AND WASTE," which includes provisions related to municipal regulation of toilets, sewers and septic tanks, garbage, slaughterhouses, spitting, waste from fruit sold for retail, rubbish and discarded refrigerators. *See* RSA 147:8 (Supp. 2002), :9 (1996), :10 (Supp. 2002), :15 (Supp. 2002), :17-a (1996), :18 (1996), :19-:21-a (1996).

If we were to interpret RSA 147:1, I, as broadly as the town urges, the result would be "a total abdication and delegation of legislative authority to towns, without any guidelines, supervision or legislative review whatsoever" with respect to protecting the public health. *Girard v. Town of Allenstown*, 121 N.H. 268, 272 (1981); *see D.A.B.E. v. Toledo-Lucas Cty. Bd. of Health*, 773 N.E.2d 536, 542 (Ohio 2002) (declining to interpret statute similar to RSA 147:1, I, as vesting "local boards of health with unlimited authority to adopt regulations addressing all public-health concerns").

Such a sweeping interpretation of RSA 147:1, I, would potentially conflict with the New Hampshire Constitution, which grants municipalities only limited legislative authority. *See Girard*, 121 N.H. at 272. Under the New Hampshire Constitution, "[t]he supreme legislative power . . . [is] vested in the senate and house of representatives." N.H. CONST. pt. II, art. 2. As subdivisions of the State, towns "have only such powers as are

expressly or impliedly granted to them by the legislature." *Public Serv. Co.*, 120 N.H. at 71.

We rejected a similar argument in *Casico*, 142 N.H. at 317. At issue in *Casico* was a city ordinance requiring those selling alcoholic beverages on site to obtain a city-issued license in addition to the license required by the State statutory scheme. *Id.* at 314. The city argued that because RSA 47:17, IV (1991) expressly authorized municipal regulation of liquor sales, the State statutory scheme governing the sale and distribution of alcoholic beverages did not preempt the city ordinance. *Id.* at 317.

■ We ruled that the State statutory scheme preempted the city ordinance, notwithstanding the general licensing authority conferred by RSA 47:17, IV. *Id.* In effect, the general authority conferred by 47:17, IV was suspended in operation while the State scheme for licensing and regulation of on-premises sales of alcoholic beverages remained in force. *Id.*; *see State v. Angelo*, 71 N.H. 224, 228 (1902). Similarly, in this case, we conclude that whatever power towns may have to regulate to protect the public health under RSA 147:1, I, is subordinate to the State law governing indoor smoking in restaurants. *See Public Serv. Co.*, 120 N.H. at 71.

■ Because the State indoor smoking law constitutes a comprehensive and detailed statutory scheme, and because we hold that there is no statutory provision permitting additional municipal regulation of smoking in restaurants, we conclude that the State law preempts the town ordinance.

■ The town asserts that the ordinance is not preempted because it is consistent with the overall goals of the State law. "We have stated repeatedly that towns may not regulate a field that the State has preempted." *Stablex Corp.*, 122 N.H. at 1104 (quotation and brackets omitted). Because the State has preempted the field of regulating indoor smoking in restaurants to protect the public health, the town has no power to regulate that field. *See id.*; *see also Public Serv. Co.*, 120 N.H. at 71. The town ordinance, adopted specifically to protect the public health, is therefore inconsistent with and necessarily preempted by the State law.

We need not address the parties' arguments concerning whether various provisions of the ordinance directly conflict with the State law. "Where the state has preempted the field, local law regulating the same subject is inconsistent with the state's transcendent interest, whether or not the terms of the local law actually conflict with the statewide legislation." 5 E. McQUILLIN, MUNICIPAL CORPORATIONS § 15.20, at 109 (3d ed. rev. 1996).

*Reversed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.