Maiden v. City of Manchester, et al.   CV-03-190-M   03/08/04
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Diane Maiden,
       Plaintiff

       v.                                      Civil No. 03-190-M
                                               Opinion No. 2004 DNH 041
City of Manchester, New Hampshire;
Matthew Normand, Deputy City Clerk;
and the Manchester Board of Mayor
and Aldermen,
       Defendants


                          **O R D E R**


       Plaintiff, Diane Maiden, is a tattoo artist.  She brings

this action against the City of Manchester and various municipal

political leaders, seeking declaratory and injunctive relief.

She claims that a Manchester ordinance, purportedly aimed at

protecting the public from health risks associated with

tattooing, actually operates to prohibit tattooing within city

limits.  Because, she says, tattooing is both an art form and

expressive speech, the restrictive ordinance barring her from

engaging in the practice of tattooing violates her state and

federal constitutional rights.

Defendants deny that the ordinance is, in any way, constitutionally infirm and move for summary judgment. Plaintiff objects and moves for summary judgment as well.

## Background

In 2002, the State of New Hampshire repealed its law governing "tattoo parlors" and enacted a new, more comprehensive statute governing "body art" (which includes body piercing, branding, and tattooing). See N.H. Rev. Stat. Ann. ("RSA") ch. 314-A (Supp. 2003). Among other things, RSA ch. 314-A establishes a licensing procedure for those practicing body piercing, branding, and tattooing; prescribes certain minimum safe practices for those performing body art on others; and prohibits (or restricts) the performance of certain forms of body art on minors.

That statute (like its predecessor) also authorizes the commissioner of the Department of Health and Human Services ("HHS") to adopt rules relative to the practice of body piercing, branding, and tattooing. RSA 314-A:6. The regulations adopted by HHS are, like RSA ch. 314-A, lengthy and comprehensive. Among other things, they detail the State's licensing requirements,

health and safety standards, and disciplinary procedures that may be invoked against those found in violation of the statute or the regulations. N.H. Code Admin. R. He-P 1100 (2000). The State has, then, enacted a comprehensive statutory and regulatory system governing the licensing, conduct, and oversight of those who offer tattoos and other body art to the public.

Plaintiff apparently has extensive training and experience as a tattoo artist. She began her career in 1990, as an apprentice in a tattoo studio in southern New Hampshire and, in 1997, obtained a license to practice tattooing from the State. In each subsequent year, in satisfaction of the State's re-licensing requirements, she has taken at least three hours of continuing education on topics such as disease transmission, blood-borne pathogens, sterilization and aseptic techniques, and safe tattooing practices.

In 2001, plaintiff decided to open a tattoo studio in Manchester. She soon learned, however, that a local ordinance, enacted in 1962, provides that only licensed physicians may practice the art of tattooing within the City. See Manchester Code of Ordinances, Title XIII, Ch. 130, § 130.10 ("No person,

3

not being registered as a qualified physician, shall mark the body of any person by means of a tattoo."). See also Id. at § 130.99 ("Any person who shall violate any of the provisions of this chapter for which no penalty is otherwise provided shall be subject to a fine not exceeding the maximum allowed by RSA 47:17 or other law."). After speaking with various local officials, plaintiff determined that the City was unlikely to amend the ordinance. Absent an amendment (or repeal) of § 130.10 of the ordinance, she could not open her tattoo studio within city limits without fear of prosecution since, although she is a state-licensed tattoo artist, she is not a licensed physician.

## Discussion

In her complaint, plaintiff advances two claims. First, she asserts that tattooing is expressive "speech," protected by the United States Constitution. Accordingly, she claims that the City's ordinance unduly restricts and unconstitutionally infringes upon her First Amendment rights (count one). Next, she advances essentially the same claim under the New Hampshire Constitution, Part 1, articles 5, 22, and 30 (count two) - a state law claim over which she asks the court to exercise supplemental jurisdiction.

4

The Supreme Court has, however, repeatedly recognized that federal courts must avoid ruling upon the constitutionality of state statutes (or local ordinances) if the litigants' underlying dispute can be resolved on other grounds.

> The Court developed, for its own governance in the cases confessedly within its jurisdiction, a series of rules under which it has avoided passing upon a large part of all the constitutional questions pressed upon it for decision. They are:
>
> * * *
>
> 4. The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.

Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (citing Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 193 (1909) ("Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons.")). See also Cuesnongle v. Ramos, 835 F.2d 1486, 1495 (1st Cir. 1987) ("[O]ne of the most firmly established and respected doctrines in our jurisprudence [is] that federal constitutional issues should be

5

avoided where other grounds of decision are available. . . . A natural corollary of this principle is that unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.") (citations and internal punctuation omitted).

This case appears to lend itself to resolution under applicable state law, without the need to invoke federal constitutional principles. The record and pertinent statutory provisions and case law suggest that the City's forty year-old ordinance was likely preempted in 2002 by the legislature's enactment of a comprehensive statutory scheme (RSA ch. 314-A) to license and regulate practitioners of body art.

Under New Hampshire law, "[i]t is well settled that towns cannot regulate a field that has been preempted by the State." Town of Hooksett v. Baines, 148 N.H. 625, 627 (2002). More recently, the New Hampshire Supreme Court observed that:

> Generally, a detailed and comprehensive State statutory scheme governing a particular field demonstrates legislative intent to preempt that field by placing exclusive control in the State's hands. In such circumstances, municipal legislation dealing with that field runs counter to the State statutory scheme.

6

JTR Colebrook, Inc. v. Town of Colebrook, 149 N.H. 767, 770 (2003) (citation and quotation marks omitted).  Of course, the fact that "the State regulatory scheme is comprehensive and detailed does not end the preemption inquiry, . . . because a comprehensive scheme could nonetheless authorize additional municipal regulation."  Id. (quoting Casico, Inc. v. City of Manchester, 142 N.H. 312, 316 (1997)).  Here, however, the legislative history of RSA ch. 314-A suggests that the statute, in its current form, does not authorize such "additional municipal regulation."

In its earlier form, RSA ch. 314-A explicitly authorized local municipalities to regulate the practice of tattooing, provided such regulations were no less restrictive than the statutory provisions.  See RSA 314-A:5 (1995) (repealed 2002) ("Nothing in this chapter shall be construed as preventing towns and cities from prohibiting or regulating the practice of tattooing under RSA ch. 31 and RSA ch. 47, provided that such regulation shall be no less stringent than the provisions of this chapter or rules adopted pursuant to this chapter.").  But, when that statute was repealed, revised, and re-enacted in 2002, the new version omitted any language authorizing additional

7

regulation at the local level.  Such an omission suggests that the legislature intended the current version of RSA ch. 314-A to preempt municipal ordinances and other local regulatory restrictions aimed at practitioners of body art.  See, e.g., Colebrook, 149 N.H. at 771-72 ("Had the legislature intended to permit municipalities to enact stricter [standards than those imposed by the statute], it could have explicitly done so.").[1]

**Conclusion**

The City of Manchester's ordinance limiting the practice of tattooing exclusively to licensed physicians is outdated and likely preempted by RSA ch. 314-A.  If so, this case may be

---

[1]    Parenthetically, the court notes that while the HHS regulations governing tattooing seemingly anticipate that local regulations might have an indirect effect on tattoo artists, see, e.g., He-P 1102.02(c) (requiring the approval of local health, building, zoning, and fire officers before an individual may open a tattoo studio), nothing in those regulations (or RSA ch. 314-A itself) suggests that municipalities were vested with the authority to, in essence, bar tattoo establishments entirely (by, for example, limiting tattooing exclusively to doctors - a professional group not generally known to practice the art of tattooing).  It probably also bears mentioning that the regulations set forth in He-P 1100 were enacted under the prior (repealed) version of RSA ch. 314-A which, unlike the current version, plainly envisioned regulation of tattoo establishments at a local level; as noted above, the current version of the statute omits any such grant of regulatory authority to municipalities.  Finally, the court notes that the regulations embodied in He-P 1100 appear to have expired on August 19, 2003.

8

resolved without the need to address the constitutional challenges advanced by plaintiff.

Accordingly, on or before April 9, 2004, defendants shall submit a legal memorandum showing cause why judgment should not be entered in favor of plaintiff on grounds that, by enacting a comprehensive statutory scheme governing tattooing, the State has completely preempted Manchester Code of Ordinances, Title XIII, Ch. 130, § 130.10. Should she choose to respond, plaintiff shall do so within 21 days after defendants file their memorandum.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 8, 2004

cc:  Jennifer A. Eber, Esq.
     Robert J. Meagher, Esq.

9