Maiden v. Manchester, et al.        CV-03-190-M   05/06/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Diane Maiden,
      Plaintiff

      v.                                Civil No. 03-190-M
                                        Opinion No. 2004 DNH 078
City of Manchester, New Hampshire;
Matthew Normand, Deputy City Clerk;
and the Manchester Board of Mayor
and Aldermen,
      Defendants


                        **O R D E R**


      Plaintiff, Diane Maiden, is a tattoo artist.  She brings

this action against the City of Manchester and various municipal

political leaders, seeking declaratory and injunctive relief.

She claims that a Manchester ordinance, purportedly aimed at

protecting the public from health risks associated with

tattooing, in effect operates to prohibit tattooing altogether

within city limits.  And, says plaintiff, because tattooing is

both an art form and expressive speech, the restrictive ordinance

barring her from engaging in the practice of tattooing violates

her state and federal constitutional rights.

## Background

Plaintiff has extensive training and experience as a tattoo artist. She began her career in 1990, as an apprentice in a tattoo studio in southern New Hampshire. In 1997, she was licensed by the State of New Hampshire, entitling her to practice tattooing. Each year thereafter, in satisfaction of the State's re-licensing requirements, she has taken at least three hours of continuing education on topics such as disease transmission, blood-borne pathogens, sterilization and aseptic techniques, and safe tattooing practices.

In 2001, plaintiff decided to open a tattoo studio in Manchester. She soon learned, however, that a local ordinance, enacted in 1962, provides that only licensed physicians may practice the art of tattooing within the City. See Manchester Code of Ordinances, Title XIII, Ch. 130, § 130.10 ("No person, not being registered as a qualified physician, shall mark the body of any person by means of a tattoo."). See also Id. at § 130.99 ("Any person who shall violate any of the provisions of this chapter for which no penalty is otherwise provided shall be subject to a fine not exceeding the maximum allowed by RSA 47:17 or other law."). After speaking with various local officials,

2

plaintiff determined that the City was unlikely to amend the ordinance. Absent an amendment (or repeal) of § 130.10 of the ordinance, she could not open a tattoo studio within city limits without fear of prosecution since, although she is a state-licensed tattoo artist, she is not a licensed physician.

Subsequently, plaintiff brought this action challenging the City's ordinance. The parties filed cross motions for summary judgment and, by order dated March 8, 2004, the court directed defendants to submit a legal memorandum showing cause why judgment should not be entered in favor of plaintiff on grounds that, by enacting N.H. Rev. Stat. Ann. ("RSA") ch. 314-A (2003 Supp.) - a comprehensive statutory scheme governing, among other things, tattooing - the State has completely preempted the City's far more restrictive ordinance regulating the same subject. Maiden v. City of Manchester, No. 03-190-M, 2004 DNH 41 at 9 (D.N.H. March 8, 2004). Defendant has complied with that order and submitted a legal memorandum on the issue (document no. 20). Plaintiff has submitted her response (document no. 21).

## Legal Framework and Standard of Review

Under the New Hampshire Constitution, "[t]he supreme legislative power . . . [is] vested in the senate and house of representatives." N.H. Const. pt. II, art. 2. And, as the New Hampshire Supreme Court has noted, because towns and cities are "subdivisions of the State, [they] have only such powers as are expressly or impliedly granted to them by the legislature." JTR Colebrook, Inc. v. Town of Colebrook, 149 N.H. 767, 772-73 (2003) (citation omitted). Consequently, "[i]t is well settled that towns cannot regulate a field that has been preempted by the State." Town of Hooksett v. Baines, 148 N.H. 625, 627 (2002).

With regard to the preemption issue, the New Hampshire Supreme Court recently observed that:

> Preemption may be express or implied. . . . Implied preemption may be found when the comprehensiveness and detail of the State statutory scheme evinces legislative intent to supersede local regulation. State law preempts local law also when there is an actual conflict between State and local regulation. A conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa. Even when a local ordinance does not

4

> expressly conflict with a State statute, it will be preempted when it frustrates the statute's purpose.

North Country Envtl. Servs. Inc. v. Town of Bethlehem, __ N.H. __, 843 A.2d 949, 954 (2004) (citations omitted) (emphasis supplied). See also JTR Colebrook, 149 N.H. at 770 ("Generally, a detailed and comprehensive State statutory scheme governing a particular field demonstrates legislative intent to preempt that field by placing exclusive control in the State's hands. In such circumstances, municipal legislation dealing with that field runs counter to the State statutory scheme.") (citation and quotation marks omitted); Arthur Whitcomb, Inc. v. Town of Carroll, 141 N.H. 402, 406 (1996) ("[The Court will] infer an intent to preempt a field when the legislature enacts a comprehensive, detailed regulatory scheme.").

Of course, the fact that "the State regulatory scheme is comprehensive and detailed does not end the preemption inquiry, . . . because a comprehensive scheme could nonetheless authorize additional municipal regulation." Casico, Inc. v. City of Manchester, 142 N.H. 312, 316 (1997)). Accordingly, to resolve the preemption question, the court must necessarily focus on an array of factors.

5

The following questions are pertinent in determining whether the state has preempted the field: does the ordinance conflict with state law; is the state law, expressly or impliedly, to be exclusive; does the subject matter reflect a need for uniformity; is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation; and does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature.

North Country, 843 A.2d at 954-55 (citation omitted).

With those principles in mind, the court turns to defendants' assertion that RSA ch. 314-A does not preempt Manchester's local ordinance limiting the practice of tattooing exclusively to licensed physicians.

## Discussion

I.  Background.

In 2002, the State of New Hampshire repealed its law governing "tattoo parlors" and enacted a new, more comprehensive statute governing "body art" (which includes body piercing, branding, and tattooing).  See RSA ch. 314-A (2003 Supp.).  RSA ch. 314-A is a comprehensive statutory system governing the licensing, conduct, and oversight of those who offer tattoos and

other body art to the public in New Hampshire. Among other things, RSA ch. 314-A establishes a licensing procedure for those wishing to provide body piercing, branding, and tattooing services to the public; provides that, subject to a limited exception, no one shall be eligible for such a license without first completing a three-year apprenticeship under the supervision of a licensed body artist; prescribes minimum safe practices for those performing body art on others; and severely restricts the performance of certain forms of body art on minors.

The re-enacted version of RSA ch. 314-A (like its predecessor) also authorizes the commissioner of the Department of Health and Human Services ("HHS") to adopt rules relative to the practice of body piercing, branding, and tattooing in New Hampshire. RSA 314-A:6. To date, however, HHS has failed to adopt any administrative rules, and those adopted under the prior statutory scheme expired on August 19, 2003. See N.H. Code Admin. R. He-P 1100 (2000). Those now-expired regulations established exceedingly detailed practices and procedures applicable to tattooing, designed to insure that sterile conditions are maintained and that health risks, such as those associated with the transmission of blood-borne pathogens, are

7

minimized.  Presumably, when those regulations are re-enacted, they will contain similarly detailed restrictions designed to protect the public's health and safety.

The Manchester ordinance at issue in this case was enacted in 1962 and provides that only "registered" and "qualified" physicians may practice the art of tattooing.  Manchester Code of Ordinances, Title XIII, Ch. 130, § 130.10.  The ordinance does not appear to have been amended since RSA ch. 314-A was repealed, amended, and reenacted in 2002.  Nevertheless, defendants assert that the ordinance is not preempted by RSA ch. 314-A and constitutes a valid and lawful effort to protect the public from potential harms associated with tattooing.

II.  <u>Defendants' Views on Preemption</u>.

In support of their assertion that RSA ch. 314-A does not preempt the Manchester ordinance restricting tattooing exclusively to licensed physicians, defendants say:

> the Manchester Ordinance [does] not directly conflict
> with the State statute, nor does it run counter to the
> legislative intent underlying the statutory scheme.  It
> does not conflict with the statute because it promotes
> the health and safety purpose of the statute by having
> physicians perform this invasive procedure.  Otherwise,

8

> it does not run counter to the legislative intent of this statute, which is to make sure that if tattoos are going to be performed, they are going to be done in a hygienic and sanitary manner.

Defendants' memorandum (document no. 20) at 3. The court disagrees.

Defendants' central thesis is that, since RSA ch. 314-A reflects a legislative intent to protect the public from the risks associated with the performance of body art by unskilled persons under non-sterile conditions, the City may adopt any local restrictions on the performance of body art - even those which effectively prohibit it - provided such local regulations can be justified as having been designed to "protect the public's health." In other words, defendants suggests that because the State's purpose is to protect the public from certain potential health hazards associated with body art, the City is free to protect the public to an even greater extent, by effectively banning the practice of tattooing in the City.[1]

---

[1] Defendants have not pointed to any examples within either the City or the State of licensed physicians practicing the art of tattooing. By limiting tattooing exclusively to licensed physicians - a professional group not generally known to practice the art of tattooing - the City's ordinance effectively bans tattooing within city limits.

9

Defendants argument obviously sweeps too broadly. That the general purpose behind the challenged ordinance was to protect public health hardly means that it is necessarily consistent with the provisions of RSA ch. 314-A. The City's ordinance, in practical effect, prohibits the performance of body art within Manchester. Therefore, it bans the very conduct RSA ch. 314-A specifically authorizes and regulates within New Hampshire. The City in very real terms is telling otherwise qualified citizens that they cannot do in Manchester what the legislature has said they can do in Manchester and anywhere else in New Hampshire. Such municipal regulatory legislation is not permitted. See, e.g., North Country, 843 A.2d at 954 (holding that a local ordinance "conflicts" with state legislation if it prohibits conduct which a statute expressly permits). The City's ordinance plainly attempts to regulate the very area that the statute regulates: who may offer body art to the public and under what conditions. Again, such municipal regulation is not permissible given the statute's comprehensive scope. See, e.g., Casico, 142 N.H. at 316 ("Contrary to the city's contention, the comprehensiveness of the statutory scheme also extends to the licensing and regulation of on-premises sales of alcoholic

10

beverages - the very area that the city seeks to regulate through the ordinance.").

Of course, even a comprehensive statute can expressly authorize some local regulation on the topic covered by the statute.  See Casico, 142 N.H. at 316.  In this case, however, RSA ch. 314-A contains no such express grant of authority to local municipalities.  In fact, that statute, as re-enacted, pointedly dropped language from the prior version that expressly authorized additional regulation of tattooing at the local level.

In its earlier form, RSA ch. 314-A explicitly authorized local municipalities - like Manchester - to regulate the practice of tattooing, provided such regulations were no less restrictive than the statutory provisions.  See RSA 314-A:5 (1995) (repealed 2002) ("Nothing in this chapter shall be construed as preventing towns and cities from prohibiting or regulating the practice of tattooing under RSA ch. 31 and RSA ch. 47, provided that such regulation shall be no less stringent than the provisions of this chapter or rules adopted pursuant to this chapter.").  But, when that statute was repealed, revised, and re-enacted in 2002, the new version omitted any language authorizing additional

11

regulation at the local level. Such an omission, particularly given the comprehensiveness of the statute itself, suggests that the legislature intended the current version of RSA ch. 314-A to preempt municipal ordinances and other local regulatory restrictions aimed at how (and by whom) body art is practiced. See, e.g., JTR Colebrook, 149 N.H. at 771-72 ("Had the legislature intended to permit municipalities to enact stricter [standards than those imposed by the statute], it could have explicitly done so.").

Moreover, even if one were to indulge defendants' argument that the City's ordinance does not expressly "conflict" with RSA ch. 314-A, that ordinance unquestionably "frustrates" the goals of the statute. See North Country 843 A.2d at 954-55. Among other things, the statute plainly intends to authorize trained and licensed citizens to provide tattooing services to the public under sanitary conditions - and people who provide such services need only be trained and licensed, they do not need to be licensed physicians. By expressly preventing non-physicians from practicing the art of tattooing, the City's ordinance "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature." Id.

12

Finally, the detailed and comprehensive scope of the now-expired HHS regulations in this area supports the conclusion that RSA ch. 314-A preempts any local legislation affecting who may perform body art and the conditions under which they must operate. That those regulations have expired does little to undermine this conclusion, since RSA ch. 314-A was repealed, revised, and re-enacted while the regulations were still in effect. Consequently, the state legislature was well aware of their detailed nature when the statute was re-enacted and, presumably, anticipated that those regulations would be re-enacted in substantially similar form - at least with regard to those regulations which address the physical requirements of tattoo studios, the use of aseptic techniques, the use and disposal of needles, sterilization procedures, etc. Accordingly, the statute provides:

> The commissioner shall adopt rules, under RSA 541-A, relative to the practice of body piercing, branding, and tattooing and the operations of tattoo and body piercing establishments. Such rules shall include:
>
> I.   Standards of hygiene to be met and maintained by establishments and practitioners in order to receive and maintain a license to carry out the practice of tattooing or body piercing, and the manner in which records of period[ic] spore tests are to be maintained and reported. All records shall be maintained for a period of 7 years.

II.  Procedures for granting, revoking, and reinstating a license.

III. Fines and fees.

IV.  Inspection of body piercing, branding, and tattooing establishments.

V.   The maintenance of records pertaining to parental consent for minors, including names, dates of birth, type of identification used, and any other evidence of parentage or guardianship.

RSA 314-A:6 (2003 Supp.).


## Conclusion

The New Hampshire legislature has expressly authorized licensed and qualified individuals to perform body art on others; it has not limited that practice exclusively to licensed physicians.  Nor has it vested municipalities with authority to adopt local regulations governing the performance of body art. And, in light of the comprehensive regulatory scheme established by RSA ch. 314-A to govern practitioners of body art and the conditions under which they operate, the City's vastly more restrictive ordinance on the subject cannot stand.

While plaintiff asserts that the City's ordinance restricting the practice of tattooing exclusively to licensed

14

physicians infringes her First Amendment rights, the court need not address that constitutional claim. It is plain that Manchester Code of Ordinances, Title XIII, Ch. 130, § 130.10 is completely preempted by RSA ch. 314-A and is invalid and unenforceable. Manchester cannot legislatively contradict the State. See generally, Public Serv. Co. v. Town of Hampton, 120 N.H. 68, 71 (1980) ("Towns are merely subdivisions of the State and have only such powers as are expressly or impliedly granted to them by the legislature."); Lavallee v. Britt, 118 N.H. 131, 133 (1978) ("Towns have such powers as the legislature specifically grants to them and such powers as are implied or incidental to an express grant.").

Plaintiff's motion for summary judgment (document no. 7) is granted to the extent it seeks a declaration that § 130.10 is unenforceable. Defendants' motion for summary judgment (document no. 8) is denied. Plaintiff's motion to strike (document no. 17) is denied as moot. The Clerk of Court shall enter judgment in favor of plaintiff and close the case.

15

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

May 6, 2004

cc:  Robert J. Meagher, Esq.
     Jennifer A. Eber, Esq.